# In the
# United States Court of Appeals
## For the Seventh Circuit

Nos. 05-4576 & 06-2839

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

OWEN F. SILVIOUS,

*Defendant-Appellant.*

Appeals from the United States District Court
for the Eastern District of Wisconsin.
No. 05 CR 74—**William C. Griesbach**, *Judge.*

SUBMITTED FEBRUARY 14, 2007[1]—DECIDED JANUARY 4, 2008

Before KANNE, ROVNER, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Owen Silvious pleaded guilty to five counts of mail fraud, 18 U.S.C. § 1341, and was sentenced to 105 months' imprisonment and three years' supervised release with several special conditions. The district court also ordered restitution of approximately $1.2 million and criminal forfeiture of the proceeds of the fraud. Silvious had counsel in the district court but

---

[1] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2).

is representing himself on appeal. He argues that he should have been permitted to withdraw his guilty pleas and also challenges several aspects of his sentence. We affirm.

## I. Background

Silvious contracted to supply 6500 metric tons of wheat to Toan Hung Flour Mills ("TH Flour"), a flour mill in Vietnam. He gave TH Flour, its bank, and the broker of the deal, Akhtar Khwaja, numerous documents purporting to demonstrate that the wheat had been inspected, certified, and loaded onto a freighter in Houston, Texas. Silvious accepted nearly $700,000 in payment from the $1.17 million the flour mill paid Khwaja on the contract. The shipment did not arrive as promised, and after first giving assurances, Silvious ultimately claimed that the wheat had spoiled due to poor ocean conditions and delays at the Panama canal. A subsequent FBI investigation prompted by a complaint from the owner of TH Flour revealed that all of the documents Silvious had provided were fraudulent and that no shipment had ever been arranged. As a result of Silvious's fraud, TH Flour defaulted on a high-interest loan and became the target of an investigation by Vietnamese authorities.

In March 2005 Silvious was charged with five counts of mail fraud. The indictment also included notice that the government would seek criminal forfeiture of certain assets that were specifically identified as proceeds of the crime. The indictment stated that the government sought forfeiture pursuant to 18 U.S.C. § 982 and § 2314, and 21 U.S.C. § 853.

Silvious and his attorney, Thomas Phillip, began plea negotiations with the government. At the first change-of-plea hearing, Phillip reported to the district court that

the parties had been unable to reach terms acceptable to Silvious, but that Silvious was contemplating entering blind pleas. A second change-of-plea hearing was held on August 16, 2005, but when that hearing commenced, Silvious told the court he was reluctant to plead guilty because (he argued) § 982 does not authorize forfeiture of the proceeds of mail fraud. The district court replied that any objection to the forfeiture would be taken up at sentencing.

During the ensuing plea colloquy, Silvious told the court he would seek to withdraw his guilty pleas "if the Government should do anything between now and the day I'm sentenced that would interfere with my being able to accomplish what has to be accomplished." When the judge told him that a guilty plea "disposes of" the case, Silvious expressed his concern that the government would renege on an oral promise to recommend a downward adjustment for acceptance of responsibility and a prison sentence within the guidelines range. The government vowed to keep its promise but noted that the district court had the final authority to select a sentence. After Silvious stated he understood and still wanted to proceed, the court accepted his guilty pleas to the five counts of mail fraud.

A hearing on sentencing and forfeiture was then scheduled for November 17, 2005. In the meantime, the district court entered a preliminary order of forfeiture. Silvious, through counsel and in a pro se brief, again objected to the statutory basis of the forfeiture. In its written response, the government conceded that the statutes cited in the indictment did not authorize forfeiture of the proceeds of Silvious's fraud. The government argued, however, that forfeiture nevertheless was appropriate under another statute, 28 U.S.C. § 2461(c). The government argued that § 2461(c) authorizes criminal forfeiture in connection with any crime for which civil

forfeiture would be authorized—and civil forfeiture for simple mail fraud may be pursued under 18 U.S.C. § 981. *See* 18 U.S.C. §§ 981(a)(1)(C), 1956(c)(7), 1961(1)(B).

At the sentencing hearing, the district court concluded that the statutory basis for the forfeiture as listed in the indictment was incorrect but agreed with the government that § 2461(c) permitted the forfeiture. The court determined that correcting the statutory basis of the forfeiture would not prejudice Silvious because the indictment had contained the requisite notice that the government intended to seek forfeiture. FED. R. CRIM. P. 32.2(a). Silvious objected to the district court's conclusion and requested a recess.

When the hearing resumed, Silvious requested a continuance so he could file a motion to withdraw his guilty pleas. When asked to explain the basis of his request, Silvious replied that he had always maintained that he is "innocent of this crime" and that he never intended for TH Flour to lose any money. He also accused the government of withholding from "the Vietnamese people" funds it already had seized. The district court concluded that Silvious had not established good cause for withdrawing his pleas. *See* FED. R. CRIM. P. 11(d)(2)(B). The court reasoned that his claims of innocence contradicted his sworn statements at his change-of-plea hearing and that his motion appeared to be an attempt to delay the proceedings.

The court then proceeded to sentencing, and the government, as agreed, recommended a three-level reduction in Silvious's offense level for acceptance of responsibility. U.S.S.G. § 3E1.1(a)-(b). But the district court was skeptical, in particular because Silvious had not accounted for all the proceeds of his fraud and because he had not truthfully acknowledged his criminal conduct. The court thus concluded that acceptance points were not war-

ranted. The court calculated a guidelines imprisonment range of 84 to 105 months and imposed a sentence of 105 months based in part on what it characterized as the "extremely aggravated" nature of the offense. The district court also imposed three years' supervised release and imposed a number of special conditions. Finally, the court ordered Silvious to pay restitution to TH Flour and entered an order of forfeiture.

## II. Discussion

On appeal Silvious raises a dozen arguments of varying merit. We begin with his contention that the district court erroneously denied his motion to withdraw his guilty pleas—a decision we review for abuse of discretion. *United States v. Rinaldi*, 461 F.3d 922, 927 (7th Cir. 2006). Once a district court accepts a guilty plea, the defendant may withdraw it only for a "fair and just reason." FED. R. CRIM. P. 11(d)(2)(B); *Rinaldi*, 461 F.3d at 926. Legal innocence is one such reason. *See Rinaldi*, 461 F.3d at 927. The burden lies with the defendant to demonstrate a fair and just reason for withdrawal. *See United States v. Walker*, 447 F.3d 999, 1004 (7th Cir. 2006).

In the district court, Silvious stated that he was innocent of the charges because he lacked fraudulent intent, although he admitted that he "did cause some money to be transferred to me in Virginia." He stated that he never wanted TH Flour to lose money and that he hoped the money would be returned soon. The district court found these representations weak and suspected that Silvious sought to continue his sentencing hearing simply as a delay tactic. More importantly, the district court found Silvious's claims of innocence were not credible in light of his Rule 11 colloquy, during which he admitted the factual basis prepared by the government. We see no abuse of discretion in the district court's

decision not to allow the eleventh-hour withdrawal of the guilty pleas. *See, e.g.*, *United States v. Jones*, 381 F.3d 615, 617-18 (7th Cir. 2004).

We next turn to the arguments Silvious raises regarding his sentence, beginning with an issue of first impression relating to the forfeiture. Silvious argues the forfeiture is invalid because it was ordered under statutes other than those listed in the indictment. As Silvious pointed out and the government properly conceded, 18 U.S.C. § 982 authorizes the forfeiture of the proceeds of mail fraud only where the violation affected a financial institution. *See* 18 U.S.C. § 982(a)(2)(A); *United States v. Vampire Nation*, 451 F.3d 189, 198-99 (3d Cir. 2006). However, the district court agreed with the government that forfeiture is authorized by another provision, 28 U.S.C. § 2461(c), which provides in relevant part:

> If a person is charged in a criminal case with a violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized, the Government may include notice of the forfeiture in the indictment or information pursuant to the Federal Rules of Criminal Procedure. If the defendant is convicted of the offense giving rise to the forfeiture, the court shall order the forfeiture of the property as part of the sentence.

We have not had occasion to interpret § 2461, but other circuits that have considered the issue have adopted the interpretation advanced by the government and accepted by the district court that the statute authorizes criminal forfeiture of the proceeds of any offense for which there is no specific statutory basis for criminal forfeiture as long as civil forfeiture, *see* 18 U.S.C. § 981, is permitted in connection with that offense. *See Vampire Nation*, 451 F.3d at 200 (holding that § 2461(c) permits criminal

forfeiture of proceeds of "basic" mail fraud); *United States v. Razmilovic*, 419 F.3d 134, 136 (2d Cir. 2005) ("Section 2461(c) thus authorizes criminal forfeiture as a punishment for any act for which civil forfeiture is authorized."). We agree with this interpretation. Accordingly, we evaluate Silvious's argument from the premise that the statutory basis for the forfeiture, as ultimately ordered, was sound.

Silvious contends the forfeiture nevertheless is invalid because the substitution of the statutory basis amounted to a "constructive amendment" of the indictment and a violation of the notice requirements of Rule 32.2(a) of the *Federal Rules of Criminal Procedure*. We reject this argument; the indictment was not broadened in any way by the substitution of the proper statute. *See United States v. Mitov*, 460 F.3d 901, 906 (7th Cir. 2006) ("For a change in the indictment to rise to the level of a constructive amendment, it must establish an offense different from, or in addition to, those originally charged."). In fact, we doubt the concept of constructive amendment applies here at all because it is concerned with "changes made to the indictment that affect *elements* of the crime." *Id.* (emphasis added). The Supreme Court has made clear that despite the unique procedural safeguards that must accompany it, forfeiture is part of the sentence, not a substantive charge in itself. *See Libretti v. United States*, 516 U.S. 29, 39-41 (1995).

Silvious further contends he was given insufficient notice under Rule 32.2(a), which prevents a district court from ordering criminal forfeiture unless the indictment includes notice that the government will seek forfeiture "as part of any sentence in accordance with the applicable statute." Silvious asserts that the indictment did not list the "applicable statute," and therefore the forfeiture is invalid. We do not agree with his reading of Rule 32.2(a). The "essential purpose" of notice is to inform

the defendant that the government seeks forfeiture so the defendant can marshal evidence in his defense. *United States v. Diaz*, 190 F.3d 1247, 1257 (11th Cir. 1999) (interpreting old Rule 7(c)(2)); *see United States v. Loe*, 248 F.3d 449, 464 (5th Cir. 2001). Here, the indictment informed Silvious that the government intended to seek forfeiture, and it identified the targeted assets. Listing the wrong forfeiture statute did not prevent Silvious from receiving notice under Rule 32.2(a).

Silvious next argues that the district court erroneously refused to grant him a reduction in his offense level for acceptance of responsibility. Whether a defendant has accepted responsibility is a factual determination ordinarily reviewed for clear error, *see United States v. McIntosh*, 198 F.3d 995, 999 (7th Cir. 2000), although the parties suggest that we should review for plain error because Silvious did not object. We do not find the sentencing transcript conclusive on this point, and in any event, our conclusion does not rest on the standard of review. We defer to a district court's decision whether to award acceptance points because the question often turns on the defendant's credibility. *See id.* Here, we see no error in the district court's assessment that Silvious, in failing to fully account for the proceeds of his crime and attempting to delay a long-scheduled hearing based on an incredible claim of innocence, did not accept responsibility. U.S.S.G. § 3E1.1 cmt. n.1(a), (c), (e). Moreover, Silvious provides no support for his serious charge that he was denied acceptance points because of the district judge's prejudice against him. Although Silivous appears to believe that acceptance points are automatic when a defendant pleads guilty, in fact the burden lies with the defendant to demonstrate that the reduction is warranted. *See id.*

Silvious also challenges the imposition of various special conditions of supervised release in addition to the

mandatory conditions required by 18 U.S.C. § 3583(d); he argues the conditions are overbroad and insufficiently explained. Specifically, Silvious challenges the conditions that he refrain from all forms of gambling and join Gambler's Anonymous, maintain only one personal checking account, possess or use a computer with Internet access only with the prior approval of a probation officer, and "repatriate all monies" in his Haitian bank account. As Silvious concedes, our review is for plain error because he did not object to the imposition of these conditions in the district court. *See United States v. McKissic*, 428 F.3d 719, 721-22 (7th Cir. 2005).

Section 3583(d) requires that special conditions of supervised release be no greater a deprivation of liberty than reasonably necessary and bear a reasonable relationship to the particular circumstances of the case. *United States v. Scott*, 316 F.3d 733, 735 (7th Cir. 2003). Two of the special conditions imposed on Silvious strike us as overbroad and unrelated to the circumstances of this case. First, the ban on gambling and the requirement that Silvious attend Gambler's Anonymous meetings appears arbitrary on this record, which contains no evidence that Silvious has a gambling problem. The government suggests the condition will prevent Silvious from losing money that should go to restitution. This justification is weak absent any evidence that Silvious is a gambler; moreover, it is the government's, not the district court's, explanation. Second, as we have explained in other cases, a total ban on the use of computers with access to the Internet is in most cases an overbroad condition of supervised release. *See McKissic*, 428 F.3d at 726; *United States v. Holm*, 326 F.3d 872, 878-79 (7th Cir. 2003). We have not ruled out the possibility that such a condition might be justified in some cases, but nothing in the record suggests this is one of them. We conclude the district court erred in imposing these two

conditions without relating them to the circumstances of the case as required by § 3583(d)(1)-(3).

But we do not think that the district court's imposition of these two overbroad conditions amounts to plain error requiring our intervention. In particular, Silvious has not established that the error affected his substantial rights or that a failure to correct it would jeopardize the fairness, integrity, or public reputation of the criminal proceedings. *See United States v. Olano*, 507 U.S. 725, 734-36 (1993). As we noted in *McKissic*, and more recently in *United States v. Tejeda*, 476 F.3d 471, 475 (7th Cir. 2007), conditions of supervised release are readily modifiable at the defendant's request. *See* 18 U.S.C. § 3583(e)(2); FED. R. CRIM. P. 32.1(c). Encouraging this simple expedient to remedy erroneously imposed conditions, rather than perpetuating expensive and time-consuming appeals and resentencings, *promotes* the integrity and public reputation of criminal proceedings. *See Tejeda*, 476 F.3d at 475.

The other challenged conditions are more closely related to the facts of Silvious's case and consistent with § 3583(d)(1)-(3). It is obvious why the district court would require Silvious to repatriate the funds in his offshore account, and to the extent that he claims he already has done so, this condition has no adverse effect on him. We note, however, that the court ordered Silvious to take this action both as part of restitution and as a condition of supervised release. Under these circumstances, the district court might wish to clarify whether the repatriation of the funds in the Haitian account was intended to be a condition of supervised release at all. *See United States v. Castillo*, 406 F.3d 806, 811 (7th Cir. 2005). We also discern no error with respect to the requirement that Silvious maintain just one checking account. *See United States v. Ensminger*, 174 F.3d 1143,

1148 (10th Cir. 1999) (upholding identical condition). Although the district court did not say so explicitly, the probation office's monitoring of Silvious's finances will be simplified if his accounts are limited. Silvious does not object because he wants to have more accounts; instead, he "doubts any bank will accept him as a customer." We do not understand the condition as *requiring* him to have a checking account, but rather as limiting his past practice of spreading his funds across multiple accounts.

Silvious next contends that the district court erred by instructing in the written judgment that he pay his monetary penalties "in quarterly installments of an amount not less than $25 during the period of incarceration." According to Silvious, the district judge told him at sentencing that he was to make payments while on supervised release. But the court also told Silvious that "[t]he restitution is outstanding now" and that the Bureau of Prisons would collect payments, so the written and oral pronouncements are consistent. We note, however, that each was incomplete. The district judge did not orally state the amount of the quarterly payments, and the written judgment includes the payment plan as a "special instruction," although the box indicating that payments are due immediately is unchecked. Although we do not believe this requires reversal, the district court might wish to clarify what appears to be a clerical oversight on the written judgment.

Silvious's guilty pleas, which we have concluded may stand, waived a number of his remaining arguments. *See United States v. Rogers*, 387 F.3d 925, 932 (7th Cir. 2004) (explaining that guilty plea "operates as a waiver of all non-jurisdictional defects"). For example, he has waived the argument that FBI agents conducted an illegal search and seizure of his property in Virginia. *See id.* at 934. Also waived is Silvious's contention that the mail

fraud statute is "ambiguous" and should not be construed to allow multiple convictions for the same scheme. We note for completeness that the argument is also frivolous. Each mailing was properly charged as a separate violation of the statute. *See United States v. Ledesma*, 632 F.2d 670, 679 (7th Cir. 1980).

We dispose of Silvious's remaining arguments summarily. He argues that the district court's fact-finding regarding the amount of loss caused by his fraud violates the Sixth Amendment as interpreted in *United States v. Booker*, 543 U.S. 220 (2005), and related cases. Silvious made no objection based on *Booker* in the district court, and in any event, the district court committed no error, plain or otherwise, because it applied the sentencing guidelines in an advisory manner. Silvious's contention that the district court lacked jurisdiction because he did not commit an "offense against the laws of the United States" and because the plaintiff is "the United States of America" and not "the United States" is frivolous. *See, e.g., United States v. Banks-Giombetti*, 245 F.3d 949, 953 (7th Cir. 2001). Finally, Silvious waived his argument that certain property was not forfeitable because it was not proceeds of his fraud; he does not even identify the property he says was wrongly forfeited. *See Holm*, 326 F.3d at 877 (perfunctory arguments are waived).

AFFIRMED.

A true Copy:

  Teste:

       _____

       *Clerk of the United States Court of Appeals for the Seventh Circuit*