In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 07-3754 & 07-3781

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MARJORIE VENTURELLA
and VICTORIA BIKS,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 06 CR 168—**John C. Shabaz**, *Judge.*

ARGUED NOVEMBER 4, 2008—DECIDED OCTOBER 27, 2009

Before BAUER, FLAUM, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Victoria Biks and Marjorie Venturella pled guilty to one count of mail fraud and agreed to pay a criminal forfeiture money judgment and restitution. They now claim that the forfeiture amount should have been limited to the amount of the mailing in the count of conviction, and that anything higher was tantamount to an illegal sentence. After reviewing the

record, we find no error in the forfeiture calculation. The mail fraud count that the defendants were convicted of also alleged a broader scheme to defraud numerous government agencies of hundreds of thousands of dollars in benefits. As a result, the forfeiture is not limited to the amount of the particular mailing but extends to the entire scheme. Biks also argues, separately, that she should not have to pay the full restitution amount because the loss figures stated in the Presentence Report ("PSR") were inaccurate, and that restitution should be offset by the amount of the forfeiture to avoid a potential double recovery and double jeopardy. We reject Biks's challenges to the loss figures used in calculating restitution because she withdrew her objections to the PSR during sentencing and waived her right to raise those same challenges on appeal. Finally, we find nothing amiss in imposing forfeiture and restitution because restitution is not a criminal penalty that implicates double jeopardy, and Biks has not alleged that the victims in this case are also the recipients of the forfeiture, so there is no possibility of double recovery. Therefore, we affirm Biks's and Venturella's sentences.

## I. BACKGROUND

On August 22, 1980, Victoria Biks gave birth to Paul Venturella, during which he sustained a number of injuries. Paul suffered from permanent brain damage, cerebral palsy, epilepsy, lesion of facial nerves, loss of motor power, and loss of sensory perception all because, the defendants allege, the doctor used forceps to extract him at birth. The

injuries left Paul completely disabled and unable to function without full-time care. As a result, Paul's family filed a medical negligence suit, which the parties settled for $1,237,000.

The Circuit Court of Cook County, Probate Division, had appointed Harris Trust and Savings Bank as guardian of Paul's estate, and the proceeds from the settlement were deposited with the bank into a trust fund with instructions to disburse $2,500 a month for Paul's care and maintenance. The court also instructed the bank to distribute: $100,000 to Joseph and Marjorie Venturella (Paul's maternal grandparents), and $50,000 to Victoria Biks, Paul's mother, to compensate them for services related to Paul's care; $50,000 to Biks for expenses made on Paul's behalf; and $20,000 to Biks to purchase a bed and van for Paul (based on 1983 prices).

The government alleged that Biks and her mother committed mail fraud by obtaining government benefits for Paul's care, without disclosing that Paul's trust fund had already disbursed funds for the same purpose. Biks and Venturella applied for various federal and state social security benefits, including: Supplemental Security Income ("SSI") from the Social Security Administration ("SSA"), a federal cash assistance program for disabled persons, among others, that was only available to those with assets worth less than $2,000; Wisconsin Supplemental Security Income, which had similar requirements to the federal program; and Medicaid. They obtained these benefits by falsely representing that Paul was indigent,

hiding the fact that Paul had a sizable estate in Illinois as a result of his $1,237,000 settlement.

A grand jury returned an indictment against the defendants on September 14, 2006, charging them with 30 counts of mail fraud, in violation of 18 U.S.C. § 1341. Biks was charged with two additional counts of social security fraud, in violation of 42 U.S.C. § 1383(a)(3), and Venturella with one count. The indictment also included a forfeiture charge against both defendants for two mail fraud schemes: $114,313 for counts 1-26, and $301,491 for counts 27-30. The defendants entered into a plea agreement, and pled guilty to Count One, which stated that they received a SSI check for $477.90 from the Social Security Administration that was mailed to Biks "for the purpose of executing [the mail fraud] scheme." The rest of the counts, to which the defendants did not plead, listed similar mailings, all for the purpose of executing the scheme as well. The defendants also agreed to a criminal forfeiture judgment of $114,313, and to pay restitution with the amount to be agreed upon by the parties or determined by the court.

Before sentencing, however, Biks and Venturella objected to the fraud loss and restitution calculations in the Presentence Report ("PSR"), citing mathematical errors and a lack of evidentiary support for the computations. The probation office issued a PSR Addendum which corrected the mathematical errors, and the government filed a sentencing memorandum with fifteen exhibits providing additional evidentiary support for the loss calculations. Both defendants withdrew their objections. The district

court sentenced Biks and Venturella to twenty-four months' imprisonment, but stayed Venturella's term of incarceration until Biks was released from custody. The court also ordered the defendants to pay $391,740 in restitution jointly and severally, and issued a criminal forfeiture money judgment of $114,313 against each defendant. Biks and Venturella both appeal the court's forfeiture calculation, and Biks also appeals the restitution order.

## II.  ANALYSIS

### A.  Forfeiture Calculation

The government sought forfeiture under 18 U.S.C. § 981(a)(1)(c) and 28 U.S.C. § 2461(c). Section 2461 "authorizes criminal forfeiture of the proceeds of any offense for which there is no specific statutory basis for criminal forfeiture as long as civil forfeiture is permitted [for that offense]." *United States v. Sivilious*, 512 F.3d 364, 369 (7th Cir. 2008). We have recognized that section 981(a)(1)(c) permits civil forfeiture of the proceeds of basic mail fraud, *see id.*, and, as a result, the government may seek criminal forfeiture for this offense under section 2461(c). *See Silvious*, 512 F.3d at 369 (citing *United States v. Vampire Nation*, 451 F.3d 189, 200 (3d Cir. 2006)); *see also United States v. Jennings*, 487 F.3d 564, 584 (8th Cir. 2007).

Although the defendants recognize that they agreed to pay $114,313 in forfeiture in their plea agreements, they now claim that the penalty is excessive. The defendants argue that a criminal forfeiture must be limited to the

amount associated with the count of conviction. They both pled guilty to Count One, which, according to the defendants, only alleged fraud for the mailing of a check for $477.90 from the Social Security Administration. As a result, the defendants believe that the district court erred by imposing forfeiture for a larger amount, and that it is tantamount to an illegal sentence which we can correct on appeal despite the terms of the plea agreement. *See United States v. Gibson*, 356 F.3d 761, 766 (7th Cir. 2004) ("[E]ven when a defendant, prosecutor, and court agree on a sentence, the court cannot give the sentence effect if it is not authorized by law."). Because the defendants did not raise this objection in the district court, however, we review the forfeiture calculation for plain error. *See id*. at 765.

From the structure of the indictment, it is clear that Counts One through Twenty-Six each allege a mail fraud scheme. The indictment begins with the heading "Counts 1-26," and the subheading "Background." It then sets out, in numbered paragraphs, the factual background and general allegations of the entire scheme, starting from the date of Paul's birth, up to the Sawyer County Guardianship proceedings. Following the factual background and general allegations, the indictment provides a chart that specifies the mailings corresponding with each count, which the defendants made "for the purpose of executing" the fraudulent scheme. In other words, each count, from one through twenty-six, alleges that the defendants obtained over $267,000 from their scheme to defraud various government agencies, and each mailing

was a separate act in furtherance of that scheme. The government need not prove each instance of mail fraud in order to demonstrate that the defendants participated in a fraudulent scheme; rather, "the mailings need only be 'incident to an essential part of the scheme' or a 'step in [the] plot.' " *United States v. Mooney*, 401 F.3d 940, 946 (8th Cir. 2005) (citing *Schmuck v. United States*, 489 U.S. 705, 710 (1989)). The defendants pled guilty to one count of mail fraud that also alleged a fraudulent scheme, and the amount of the mailing, by itself, does not adequately account for the proceeds obtained from their crime of conviction.

Furthermore, contrary to the defendants' claims, forfeiture is not limited solely to the amounts alleged in the count(s) of conviction. 18 U.S.C. § 981(a)(1)(C) authorizes forfeiture for "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to" the commission of certain specified offenses, including mail fraud. 18 U.S.C. § 981(a)(2)(A) defines "proceeds" as "property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense." The plain language of the section 981(a)(1)(C) along with the expansive definition of "proceeds" indicates that the statute contemplates the forfeiture of property other than the amounts alleged in the count(s) of conviction.

We have also interpreted other statutes authorizing forfeiture to include the total amount gained by the crime

or criminal scheme, even for counts on which the defendant was acquitted. *See United States v. Genova*, 333 F.3d 750, 762-63 (7th Cir. 2003) (noting that a defendant who was convicted of violating RICO, but was acquitted of certain counts, was still eligible for a forfeiture based on those activities). For instance, in *United States v. Baker*, 227 F.3d 955 (7th Cir. 2000), the defendant was convicted of fifteen counts of money laundering based on a number of credit card transactions totaling $2,950. The district court, however, ordered the defendant to forfeit $4.4 million, which included the proceeds from the defendant's "adult" businesses. *Id.* at 959. We affirmed the district court ruling because all of the funds from the defendant's illicit businesses were laundered, which made them eligible for forfeiture, *id.* at 969, and "just as the amounts of the specific credit card transactions [did] not limit [the defendant's] relevant conduct, they [did] not limit the amount of property that [was] forfeitable." *Id.*; *see also United States v. Trost*, 152 F.3d 715, 721 (7th Cir. 1998) (upholding forfeiture of $57,412 even though the five convicted counts only alleged that defendant laundered $23,000).

The defendants cite *United States v. Garcia-Guizar*, 160 F.3d 511 (9th Cir. 1998), and *United States v. Cherry*, 330 F.3d 658 (4th Cir. 2003), in support of their argument that the forfeiture should be limited to the amount of the single mailing. Their reliance on these cases is misplaced. In *Garcia-Guizar*, the defendant was charged with multiple drug offenses, and the government sought the forfeiture of $43,070 found during a search of the defendant's storage locker. *Garcia-Guizar*, 160 F.3d at 515-16. In

vacating the criminal forfeiture verdict (for the entire amount found in the locker), the Ninth Circuit held that aside from the $4,300 used by law enforcement in under-cover drug transactions, the government provided no evidence that the other funds were proceeds from the drug offenses for which the defendant was convicted. *Id*. at 518. In other words, had the government presented evidence to show that the rest of the money came from drug transactions, those additional amounts too may have been forfeitable. The difference here is that we are not concerned with the sufficiency of the evidence. The defendants already pled guilty to a mail fraud scheme that netted them proceeds in excess of $267,000, and nothing in *Garcia-Guizar* suggests that forfeiture is limited to the amounts specified in the counts of conviction. Nor does *Cherry* provide any support for the defendants' claims. The court in *Cherry* vacated the forfeiture judgment only because it had vacated the conviction upon which the forfeiture was based. *Cherry*, 330 F.3d at 670. Since the mail fraud conviction remains the basis for the forfeiture in this case, *Cherry* does little to advance the defendants' claims. We find no error in the district court's forfeiture calculation.

## B.  Restitution Calculation

Defendant Biks argues separately that the restitution calculation is inaccurate due to a number of inconsistencies in the evidence. Biks points to discrepancies between the total unauthorized payments calculated in the PSR and the calculations in the PSR Addendum. For example, the

PSR states that the amount of SSI paid out was $110,918, but the addendum lists this amount as $100,918; and the amount of state SSI subject to restitution was $13,395 in the PSR but only $12,825 in the addendum. Biks also claims that the PSR contains additional conflicting information about the number of unauthorized monthly payments for Ensure that Venturella received, and over-estimated the total loss by $136 (approximately one month's payment).

The government contends that Biks has waived this argument and we agree. Waiver is the intentional relin-quishment or abandonment of a known right, and forfei-ture is the failure to make a timely assertion of a right. *United States v. Irby*, 558 F.3d 651, 655 (7th Cir. 2009) (citing *United States v. Olano*, 507 U.S. 725, 733 (1993)) (quotations ommitted). The waiver of a right precludes appellate review, but when the right is merely forfeited, we may review the district court ruling for plain error. *Id*. Before sentencing, Biks filed objections to the PSR challenging the loss and restitution calculations. She later withdrew these objections in a revised sentencing memorandum and reiterated during sentencing that she agreed with the figures in the PSR Addendum. The government opines that Biks withdrew her objections to improve her chances of obtaining a sentencing reduction for acceptance of responsibility. And the timing of Biks's attorney's statement to the court (reiterating that Biks had withdrawn her objections) in response to the sentencing judge's statement concerning sentencing reductions for "admission of relevant conduct," certainly supports the government's argument. *See United States v. Brodie*, 507 F.3d 527, 532 (7th

Cir. 2007) (finding waiver where defense counsel had strategic reasons for not raising additional objections to the PSR).

Notwithstanding what may have been Biks's strategy to obtain an acceptance of responsibility reduction, we have recognized that the withdrawal of an objection generally results in a waiver of that argument on appeal. *See, e.g., United States v. Cunningham*, 405 F.3d 497, 502 (7th Cir. 2005) (finding that withdrawal of objection to admission of photos resulted in a waiver of the argument that the government had failed to set forth sufficient foundation for the evidence); *United States v. Scanga*, 225 F.3d 780, 783 (7th Cir. 2000) (finding waiver where defendant first objected to PSR calculations but withdrew objection after calculations were revised in PSR addendum); *United States v. Redding*, 104 F.3d 96, 99 (7th Cir. 1996) (finding waiver where defendant objected to the calculations before sentencing, but accepted them during the sentencing hearing); *see also United States v. Rodriguez*, 311 F.3d 435, 437 (1st Cir. 2002) ("[A] party who identifies an issue, and then explicitly withdraws it, has waived the issue."). Biks objected to the PSR, later withdrew her objections, and has not identified any valid reason why we should treat her case differently from the examples above. Therefore, we decline to review the forfeiture calculations on appeal.

### C. Imposing Restitution and Forfeiture

Biks next argues that imposing restitution and forfeiture for the same crime is an improper double payment,

which constitutes double jeopardy. But she did not raise this argument before the district court so we review her sentence for plain error. *Gibson*, 356 F.3d at 765. We have rejected the theory that forfeiture and restitution cannot be imposed for the same offense. *See, e.g., United States v. Leahy*, 464 F.3d 773, 793 n. 8 (7th Cir. 2006) ("[T]o the untrained eye, this might appear to be a 'double dip,'[but] restitution and forfeiture serve different goals . . ."); *United States v. Emerson*, 128 F.3d 557, 566-67 (7th Cir. 1997) (rejecting the defendant's argument that imposing forfeiture and restitution amounted to "double punishment"). Still, Biks contends that these cases were wrongly decided, and cites an Eighth Circuit case, *United States v. Ruff*, 420 F.3d 772 (8th Cir. 2005), in support of her argument that the overlap of the forfeiture and restitution amounts constitute double jeopardy and an improper double payment.

*Ruff* presented a unique situation where restitution, which normally goes to the victim, was payable to a law enforcement agency. *Ruff*, 420 F.3d at 775. The defendant argued that the agency would also receive the proceeds from the forfeiture proceedings, thus creating double recovery. *Id.* As a result, the court remanded the case to the district court to determine whether the law enforcement agency received any of the forfeited funds, and, if so, to modify the restitution order to prevent double recovery. *Id.* at 776. *Ruff* did not question the district court's authority to impose restitution and forfeiture; rather, the court was solely concerned with preventing double recovery for the law enforcement agency.

As we noted in *Emerson*, "forfeiture seeks to punish a defendant for his ill-gotten gains by transferring those gains . . . to the United States Department of Justice ["DOJ"]," 128 F.3d at 567-68, while restitution seeks to make the victim whole—in this case, the federal and state agencies that the defendants defrauded. *Id*. The victims here are separate entities from the DOJ, and Biks has not identified any real threat of double recovery. Furthermore, outside the rare occasion where the same party stands to benefit from both payments, Biks does not cite to any authority which holds that restitution must be offset by the forfeiture amount. *Contra United States v. Hoffman-Vaile*, 568 F.3d 1335, 1344 (11th Cir. 2009) (rejecting defendant's argument that forfeiture should be reduced because she paid restitution); *United States v. Bright*, 353 F.3d 1114, 1123 (9th Cir. 2004) (rejecting argument that district court should have "offset his forfeited funds against his restitution obligation"). We see no reason to overrule *Emerson*, therefore we find no error in the district court's forfeiture and restitution order.

## III.  CONCLUSION

For these reasons, we AFFIRM the defendants' sentences.