**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 25, 2011
Decided April 14, 2011

*Before*

MICHAEL S. KANNE, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 10-2873

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District Court |
| *Plaintiff-Appellee*, | for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 09 cr 222-1 |
| JAIR FIGUEROA-SORIANO, | Robert W. Gettleman, |
| *Defendant-Appellant*. | *Judge*. |

**O R D E R**

Jair Figueroa-Soriano trafficked hundreds of kilograms of powder cocaine for suppliers in Texas and Mexico. He pleaded guilty to one count of conspiring to possess five kilograms or more of cocaine with intent to distribute, *see* 21 U.S.C. § 846, and was sentenced to 168 months' imprisonment, 5½ years below the guidelines range. On appeal he challenges his sentence, arguing that the court should have sentenced him lower still by calculating his guideline range based on 5 kilograms, rather than the 299 ultimately attributed to him. He contends that the *sole* evidence of the additional 294 kilograms of cocaine was his immunized proffer. We find that Figueroa-Soriano waived his right to challenge the cocaine quantity involved and that the record supports the district court's finding that Figueroa-Soriano was responsible for 299 kilograms. We therefore affirm.

Figueroa-Soriano is a Mexican citizen who trafficked hundreds of kilograms of powder cocaine in and around Chicago. Working with suppliers in Texas and Mexico, they "fronted" cocaine to drug dealers who bought on credit and paid after reselling the drugs. Figueroa-Soriano recruited his younger brother into the scheme and served as its accountant, maintaining copious records and collecting cash for the cocaine suppliers.

After fronting five kilograms of cocaine to a government informant, Figueroa-Soriano and his brother were arrested. Agents recovered drug ledgers documenting additional sales of at least 261 kilograms of powder cocaine. Agents also found $640,000 in the rear cargo of Figueroa-Soriano's Ford Explorer and $270,307 in a secret compartment in his Chevrolet van, totaling $910,307 in cash. The ledgers showed that Figueroa-Soriano charged on average $27,000 for a kilogram of cocaine, and thus the cash was the equivalent of 33 kilograms of cocaine. In short, the evidence showed Figueroa-Soriano trafficked at least 299 kilograms of powder cocaine (5 + 261 + 33).

Figueroa-Soriano pleaded guilty to conspiring to possess five kilograms or more of cocaine with intent to distribute, *see* 21 U.S.C. § 846, and conceded that the conspiracy involved at least 5 kilograms of cocaine. For its part, the government maintained that he was responsible for a much larger quantity of drugs and reserved its position on whether he had accepted responsibility. Figueroa-Soriano then participated in a safety-valve interview. *See* U.S.S.G. § 5C1.2(a)(5). Although it was later determined that he was ineligible for the reduction because of his criminal history, during the proffer session, he admitted distributing approximately 200 kilograms.

The PSR reported that Figueroa-Soriano was responsible for 299 kilograms of cocaine. That finding was derived from the cash and drug ledgers seized, and the five kilograms fronted to the government informant. The report recommended a base offense level of 38, *see* U.S.S.G. § 2D1.1(c)(1) (2009), added two levels for his role in the offense, *see* U.S.S.G. § 3B1.1(c), subtracted three levels for acceptance of responsibility, *see* U.S.S.G. § 3E1.1(a)-(b), and concluded that his total offense level was 37. This total offense level, when coupled with a criminal history category of II, yielded a guidelines range of 235 to 293 months' imprisonment.

Figueroa-Soriano filed a pre-sentencing statement at first conceding that his base offense level was 38. He challenged only the enhancement for his role and the criminal history category. In a supplemental statement he later objected that his base offense level should be 32, *see* U.S.S.G. § 2D1.1(c)(4), reflecting only the 5 kilograms sold to the government informant. At sentencing, however, he withdrew his objection to the PSR's calculations. Instead Figueroa-Soriano argued that, when considering the factors in

§ 3553(a), the district court should weigh in his favor that he was caught with only 5 kilograms, but was being sentenced for 294 more after his proffer.

The district court adopted the PSR's calculations, but ultimately sentenced Figueroa-Soriano to 168 months' imprisonment. It cut him a 5½-year break because, had it counted only the 5 kilograms, that quantity would have yielded a total offense level of 35 not 37; because Figueroa-Soriano's criminal history was somewhat overstated as he was twice convicted days apart for illegal reentry; and because in any event he will be deported to Mexico after serving his sentence.

On appeal Figueroa-Soriano challenges his sentence on the ground that the district court should have sentenced him based solely on the 5 kilograms of powder cocaine actually seized. He contends that there was no direct evidence, besides his proffer, that he sold additional cocaine and, because proffers are immunized, the district court abused its discretion in basing its sentence on the additional drugs.

At the threshold, Figueroa-Soriano waived his right to challenge the cocaine quantities involved. In his opening brief, counsel alleges that he "contested the base level . . . [and] the Sentencing Court overruled all Appellants' objections." But that is inaccurate; counsel withdrew the objection. Counsel clearly disclaimed reliance on a guidelines challenge, arguing instead for consideration of the drug quantities under 3553(a). Counsel and client made a strategic decision; had they not, Figueroa-Soriano would not have received sentencing credit for acceptance of responsibility. The withdrawal of an objection at sentencing waives the issue for appeal. *See United States v. Venturella*, 585 F.3d 1013, 1018-19 (7th Cir. 2009). Figueroa-Soriano's withdrawal of the objection, therefore, waived consideration of his argument on appeal.

Even if Figueroa-Soriano forfeited, rather than waived, his challenge to the drug quantity, we would affirm the district court's judgment because there was no error, plain or otherwise. *See United States v. Irby*, 558 F.3d 651, 653-55 (7th Cir. 2009). Counsel cites in passing *United States v. Farmer*, 543 F.3d 363, 374-75 (7th Cir. 2008), apparently hoping that we will cobble together an analogy for him. Fundamentally, his argument rests on the premise that the *only* evidence supporting the district court's drug-quantity determination was Figueroa-Soriano's proffer. But nowhere does the record show that either the PSR or the sentencing judge considered, much less relied on, the 200 kilogram figure discussed during the proffer.

Here, unlike *Farmer*, the district court had independent grounds supporting the additional 294 kilograms attributed to Figueroa-Soriano. Beyond the 5 kilograms fronted to the government informant, the ledgers and cash proved another 294 kilograms of cocaine.

The PSR found that he was responsible for 299 kilograms by adding the drug ledgers that recorded sales of 261 kilograms, with the $910,307 signifying another 33 kilograms, and the 5 kilograms he actually delivered to the confidential informant. And counsel conceded that the PSR's calculations were correct. Evidentiary rules are relaxed at sentencing, *see United States v. Abdulahi*, 523 F.3d 757, 761 (7th Cir. 2008), where a court may consider information that has sufficient indicia of reliability to support its probable accuracy. U.S.S.G. § 6a1.3(a); *see United States v. Knox*, 624 F.3d 865, 873 (7th Cir. 2010). These calculations are sufficiently accurate, derived as they were from Figueroa-Soriano's own ledgers and the cash recovered from his cars. Hence, Figueroa-Soriano's guidelines range was based on evidence independent of his proffer. He offers no reason why we should doubt that evidence (he does not consider it at all).

AFFIRMED.