In the

# United States Court of Appeals
## For the Seventh Circuit

No. 14-3635

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOHN ALAN LEWIS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:13-CR-00079-001 — **Jane E. Magnus-Stinson**, *Judge.*

ARGUED JUNE 10, 2015 — DECIDED MAY 24, 2016

Before MANION, WILLIAMS, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* A jury found appellant John A. Lewis guilty of five federal sex offenses. The district court sentenced Lewis, who is 66 years old and in poor health, to the statutory mandatory minimum sentence of 35 years in prison. Lewis has appealed, but he does not challenge either his convictions or the prison term. The district judge, while recognizing that the chances Lewis will survive his prison sentence are

low, also included in his sentence a life term of supervised release. The only issues before us concern the supervised release portion of his sentence. (Lewis also raised a minor forfeiture issue, but that has been resolved by agreement; we do not address it.)

Lewis raised no objections in the district court to any aspect of the supervised release term and conditions. Represented by new counsel on appeal, however, Lewis argues that the court's findings and explanations were not sufficient and that we must vacate the sentence and remand for resentencing, or at least for further consideration of supervised release. See generally, e.g., *United States v. Kappes*, 782 F.3d 828 (7th Cir. 2015); *United States v. Thompson*, 777 F.3d 368 (7th Cir. 2015); *United States v. Siegel*, 753 F.3d 705 (7th Cir. 2014).

We affirm the judgment of the district court. Sound application of principles of waiver and forfeiture convinces us there is no need to send this case back to the district court. The defense had ample advance notice of the terms of proposed release that were contemplated and ultimately imposed. Before sentence was actually imposed, the court expressly invited objections and requests for further findings or elaboration. The defense expressly declined the invitation. That was waiver. Even if it were deemed only forfeiture, there was no plain error requiring remand.

I.   *The Crimes*

Because the issues on appeal are narrow, a brief summary of Lewis's crimes will suffice. In 2012 police in Indianapolis arrested another man who had first obtained sexually explicit photographs of a real girl and then pretended on-line to be a fourteen-year-old prostitute named Becky. "Becky" had on-

line chats with Lewis and sent him the sexually explicit images of the real girl. During the chats, Lewis told "Becky" he wanted to record a video of her engaging in what federal law calls sexually explicit conduct.

After police arrested the other man, they took over Becky's identity and continued communicating with Lewis. He offered repeatedly to travel to Indiana to meet Becky, telling her that he wanted to have sex with her in a hotel and then take her to live with him in Ohio. He said he would bring cameras with him to take videos and photographs of their sex.

In September 2012, Lewis drove to Indiana to meet "Becky." Police arrested him as he drove past the apartment where he believed she lived. A search of his car turned up a list of motels in the area, a digital camera, a tripod, and digital storage media containing more than 100 sexually explicit images of "Becky" and instructions for photographing sex scenes.

Lewis was charged with attempted sexual exploitation of a minor (18 U.S.C. § 2251(a)); traveling interstate for the purpose of having sex with a minor (§ 2243(b)); transporting child pornography (§ 2252(a)(1)); possessing child pornography (§ 2252(a)(4)(B)); and committing a felony sex offense involving a minor while a registered sex offender (§ 2260A). He had prior state court convictions for attempted sexual conduct with a minor and possession of child pornography. He was a registered sex offender. At the time of his arrest, he was also on probation for having failed to update his sex-offender registration. A jury convicted Lewis on all charges.

II. *The Sentencing*

Lewis faced a mandatory statutory minimum sentence of 35 years in prison, and that was his sentence. The judge recognized this was likely a de facto life sentence. Even with the maximum available good-time credit, Lewis will be 94 years old when he first becomes eligible for release, well beyond the average life expectancy for men his age. Lewis himself is already in poor health. He is quite obese, has been diagnosed with a number of coronary diseases including congestive heart failure, and had triple-bypass heart surgery several years ago.

Lewis also faced a statutory minimum term of five years supervised release. 18 U.S.C. § 3583(k). The judge sentenced Lewis to a life term of supervised release. The judge imposed the thirteen standard conditions of supervised release spelled out in the presentence report, plus nine conditions the probation officer had also recommended in the presentence report.

Lewis raised no objections to the sentence in the district court, but on appeal, he argues that the judge did not explain why she thought a life term of supervised release was appropriate, that she failed to explain her reasons for imposing many conditions of supervised release, and that several of the conditions have various substantive flaws.

III. *Recent Case Law on Supervised Release*

Before 2014, our court applied standards of waiver and forfeiture to issues concerning supervised release. See, e.g., *United States v. Silvious*, 512 F.3d 364, 371 (7th Cir. 2008) (overbroad conditions of supervised release were not plain errors requiring correction despite lack of objection); *United States v.*

*McKissic*, 428 F.3d 719, 726 (7th Cir. 2005) (finding no plain er-ror where supervised release condition was imposed without sufficient notice); *United States v. Tejada*, 476 F.3d 471, 475–76 (7th Cir. 2007) (finding no plain error in supervised release condition for drug testing).

In a series of opinions beginning in 2014, our court has taken supervised release out of the shadows and focused spotlights upon its substance and procedures. See *Kappes*, 782 F.3d at 835 n.1 (collecting cases); *Thompson*, 777 F.3d 368; *Siegel*, 753 F.3d 705. In that line of cases, we have required more from district judges by way of explanations of super-vised release terms and conditions than had been customary. We have also offered district judges a great deal of advice in the form of suggested best practices. In that same line of cases, we have not always followed our earlier precedents regarding waiver and plain error. Before addressing Lewis's claims on appeal and the waiver and forfeiture issues, we lay out the relevant landscape as shaped by our recent cases.

First, supervised release is an important part of a federal criminal sentence. It is mandated in many sentences and is imposed in the vast majority of sentences for more than one year in prison. *Kappes*, 782 F.3d at 837 (supervised release im-posed in 99% of cases where it is not mandatory but prison sentence exceeds one year). When it is managed well, super-vised release can serve the complementary goals of protecting the public and rehabilitating an offender who is returning to free society. Supervised release should not be an afterthought; it deserves careful and thoughtful attention from the sentenc-ing judge. *Thompson*, 777 F.3d at 373–75.

Second, supervised release needs to be a flexible tool, and the governing statute treats it that way. The statute provides

for a few mandatory conditions of supervised release, and it authorizes courts to impose additional standard and special conditions tailored to a particular case. 18 U.S.C. § 3583(d).

Conditions of supervised release announced at the beginning of a prison sentence will not take effect until the end of the prison sentence, often many years later. In addition, a defendant's supervised release may take place in a district other than the sentencing court. Unlike other sentence terms, therefore, the duration and conditions of supervised release may be modified by a court "at any time prior to the expiration or termination of the term." § 3583(e).

This special flexibility is a key feature of supervised release that shapes our approach to challenges to conditions of supervised release. For example, we held in *United States v. Neal*, 810 F.3d 512, 514 (7th Cir. 2016), that a defendant could challenge conditions of release on substantive (not procedural) grounds during the term of supervised release itself. At the same time, we also declined to take up, for the first time on appeal, challenges to conditions of supervised release that the defendant had chosen not to challenge in the district court. *Id*. at 521. Those were matters that needed to be raised in the district court in the first instance.

Next, as with any terms of a sentence, the sentencing judge must be able to explain the legal basis for a condition and how it will serve the statutory purposes of supervised release. *Kappes*, 782 F.3d at 837; *Thompson*, 777 F.3d at 373. The required extent of those findings and explanations can be a subject of endless debate, however. That problem is at the core of Lewis's arguments on the merits in this appeal.

In considering this and other supervised release appeals, we remember that our criminal justice system is based on adversarial principles. The people who work in it—judges, defense lawyers, prosecutors, probation officers, and others—are busy. They do not need to waste time treating matters that are not disputed as if they were. To be sure, judges have duties to oversee even matters where the adversaries agree, see *Thompson*, 777 F.3d at 374, but we shape our appellate decisions to avoid forcing busy actors to waste their time on matters that are not disputed, and not disputed for good reasons.

We also keep in mind the respective roles of the district courts and the court of appeals with regard to sentencing in general and supervised release in particular. Sentencing happens in the district courts, and conditions of supervised release require the exercise of the district court's judgment and discretion. The appellate court's role is to review parties' claims that district courts have made legal or factual errors, and to provide a remedy where such errors have harmed the interests of a party. Appellate review is ordinarily limited to matters raised in the district court. There are exceptions, of course, such as matters involving subject matter jurisdiction, or "plain errors," which are limited to those that are plain, were not intentionally waived, affect substantial rights, and seriously affect the fairness, integrity, or public reputation of judicial proceedings. *Molina-Martinez v. United States*, 578 U.S. —, 136 S. Ct. 1338, 1343 (2016); *United States v. Olano*, 507 U.S. 725, 732 (1993). But that is a high standard, and as we pointed out in *Silvious* and *Neal*, a district court can fix a problem with supervised release conditions at any time, which should make it harder to show plain error in such conditions that must be corrected immediately, despite the absence of objection. See

*Silvious*, 512 F.3d at 371, and *Neal*, 810 F.3d at 514, both citing 18 U.S.C. § 3583(e)(2).

We also keep in mind the costs of remands for resentencing, especially the human costs imposed on victims. In cases like this, where children have been victims of terrible abuse and where even one sentencing hearing can be traumatic, that concern is important. Where a significant and prejudicial error requires remand and resentencing, the trauma and other costs of resentencing may be necessary. But we should keep those costs in mind in any quest for better findings or improved procedures, especially where the defense had ample opportunity to address the issues at the time of sentencing and raised no objection.

The foundation for these limits on appellate review is that a district judge needs to ensure that parties have a fair and genuine opportunity to raise objections in the district court. In the context of supervised release, that means giving the parties advance notice of contemplated terms of supervised release or a fair opportunity to respond to unexpected developments. E.g., *Kappes*, 782 F.3d at 842–43. In addition, it is important for the district court to ensure that a sentence is not finally imposed until the parties have been fully heard. Federal Rule of Criminal Procedure 51(a) makes clear there is no need for a party to state an "exception" to a court ruling that has already been made. See, e.g., *United States v. Shannon*, 743 F.3d 496, 499–500 (7th Cir. 2014) (no waiver or forfeiture where defendant failed to object to condition first raised by district judge at hearing).

An essential consideration in virtually any appeal is whether the alleged error by the district court caused some sort of harm or prejudice to the appellant. See Fed. R. Crim. P.

52. Appellate judges are in the business of second-guessing district judges, and with careful scrutiny of most district court records, we are capable of finding room for improvement. Our central job, however, is to respond to the parties' claims of harmful error, not to go looking for errors or to invite parties to raise for the first time alleged errors that could have been presented to the district court and corrected there. If we forget our role, we will invite numerous avoidable and often pointless appeals and remands by trying to fix what is not actually broken. There are signs that our recent decisions on supervised release have invited just such appeals.

Conditions of supervised release, especially written years earlier, will inevitably have some degree of ambiguity and room for interpretation. Consider, for example, the difficulty a district judge would have had in 1990 crafting appropriate terms for restrictions on an offender's use of a computer, to take effect in the world of 2015 with mobile devices and much more widespread use of the internet in a wide array of jobs. Now consider the challenge a district judge faces today crafting such a condition likely to take effect in 2040. If we try to remove all ambiguity on the front end of the process, we set ourselves and our colleagues in the district courts an endless task.

IV. *The Waiver and Forfeiture Here*

With these considerations in mind, we turn to the issues raised by Lewis in this appeal. He contends first that the court simply failed to make findings justifying the lifetime term of supervised release and showing appropriate consideration of the factors set forth in 18 U.S.C. § 3583(d) and § 3553(a). He also objects that some of the standard and special conditions of supervised release are too vague or otherwise burdensome

and that the district court did not sufficiently explain its rea-
sons for imposing them. For example, he objects to terms re-
quiring disclosure of financial information, submitting to
searches, restricting use of computer devices, complying with
terms of sex offender treatment programs, submitting to poly-
graphs, banning possession of adult pornography and erot-
ica, prohibiting unsupervised contract with children without
advance approval, and requiring employment and support of
dependents.

There were no surprises in the sentencing hearing related
to supervised release. That fact distinguishes this case from
cases in which we have declined to find waiver of objections
to unexpected conditions of supervised release. See, e.g.,
*United States v. Hinds*, 770 F.3d 658, 665 (7th Cir. 2014); *United
States v. Farmer*, 755 F.3d 849, 853 (7th Cir. 2014). In this case,
the presentence report was provided to Mr. Lewis and his
counsel weeks before sentencing. It included all the terms of
supervised release that were actually imposed. At the sen-
tencing hearing, the court gave both sides ample opportunity
to be heard on all aspects of the decision. The defendant's
principal concern was whether the prison term of the sentence
would be greater than the statutory mandatory minimum.
(On that issue, he succeeded.)

The district court did not say much about its reasons for
ordering a life term of supervised release as opposed to the
mandatory minimum five years or some other term of years.
It was clear from the entirety of the sentencing hearing,
though, that Mr. Lewis is a repeat offender who has been very
resistant to court supervision in the past. The court provided
some explanation for the terms of supervised release that are
challenged on appeal, all driven quite obviously by the nature

of the defendant's crimes and the desire to protect the public from further offenses.

After providing those explanations, the court asked: "Counsel, do you have any legal objection to the sentence I have proposed or request any further elaboration of my reasons under Section 3553(a) both as to the term of imprisonment or the conditions of supervised release?" Both the prosecutor and the defense lawyer said "no." The court then said it would order sentence imposed as stated. App. 25.

We assume for purposes of this appeal that if the defendant had objected to some or all of these conditions or to the adequacy of the court's findings, the district court should have modified the conditions or at least provided further explanations. But our focus here is on the issues of waiver and forfeiture.

The sentencing in the district court is the main event. The parties prepare and identify the issues they wish to address. As we were told at oral argument, if the defense had raised objections to the proposed terms of supervised release or to the adequacy of the court's findings, the government was prepared to offer substantial evidence justifying those proposed terms and arguments to explain why they were appropriate. When the defense did not raise those objections, the government saw no need to waste everyone's time by offering evidence and arguments on matters that were not in dispute. If we were to remand to fill in those gaps two years after the fact, the lawyers, government agents, and other witnesses would need to be reassembled and their memories refreshed. None of that is necessary or even appropriate in light of the waiver at the time of the original sentencing.

The judge's inquiry here was not a vague "anything else?" Cf. *United States v. Speed*, 811 F.3d 854, 857–58 (7th Cir. 2016) (finding no waiver where judge asked defendants whether there was "anything unclear or confusing" and they said no). The judge asked specifically about the extent of her explanations of the sentence in general and supervised release in particular. Counsel raised no objections. We find that was sufficient to establish a waiver of the objections being raised for the first time in this appeal.

The district court followed here a procedure that tracks one we recommended to ensure that district courts address sufficiently a defendant's principal arguments in mitigation. After seeing many appeals arguing that district judges did not address mitigation arguments sufficiently, we encouraged district judges to ask defense counsel at sentencing whether they were satisfied that the court had addressed their arguments sufficiently. *United States v. Garcia-Segura*, 717 F.3d 566, 569 (7th Cir. 2013). When a district judge asks that question and is told that the defense is satisfied, the defense has waived a later appellate argument that the court failed to address the mitigation arguments sufficiently. E.g., *United States v. Donelli*, 747 F.3d 936, 941 (7th Cir. 2014). The same logic applies here.

Further, even if the judge's question and lawyers' responses were not enough to establish an intentional relinquishment of a known right needed for true waiver, the failure to object in response to the invitation would still amount to forfeiture of the arguments Lewis makes on appeal. Where the issue is the sufficiency of an explanation or findings, a meager explanation of an otherwise permissible decision does not call into question the fairness, integrity, or public reputa-

tion of the proceeding. Where the issue is the substantive content or clarity or ambiguity of a supervised release term that will not take effect for many years and that can be revised at any time, we also see no threat to the fairness, integrity, or public reputation of the proceedings. See 18 U.S.C. §3583(e)(2); *United States v. Neal*, 810 F.3d at 514.

Finally, Lewis argues that there was no waiver because the court had already made its decision, so that under Rule 51(a) no "exception" was necessary. We disagree. The court set forth the sentence it planned to impose and its reasons for doing so. The court then asked counsel whether they had objections "to the sentence I have proposed" or whether they sought further explanations. Only after both lawyers said "no" did the court say it would order the sentence imposed as stated. The defense had a fair opportunity to raise in the district court all of the issues that have been raised on appeal, and chose not to do so.

The judgment of the district court is AFFIRMED.