**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

HENRY LO,
*Defendant-Appellant.*

No. 15-10219

D.C. No.
3:14-cr-00442-WHO-1

OPINION

Appeal from the United States District Court
for the Northern District of California
William Horsley Orrick III, District Judge, Presiding

Argued and Submitted June 13, 2016
San Francisco, California

Filed October 5, 2016

Before: Richard R. Clifton and Sandra S. Ikuta, Circuit
Judges, and Royce C. Lamberth,[*] District Judge.

Opinion by Judge Ikuta

---

[*] The Honorable Royce C. Lamberth, United States District Judge for
the District of Columbia, sitting by designation.

## SUMMARY[**]

---

### Criminal Law

The panel affirmed the district court's restitution order and forfeiture money judgment, both in the amount of $2,232,894, in a case in which the defendant pleaded guilty to three counts of wire fraud and mail fraud.

The panel held that the circumstances surrounding the signing and entry of the plea agreement support the conclusion that the defendant entered into the agreement knowingly and voluntarily.

The panel rejected the defendant's challenges to the enforceability of the appeal waiver as to the restitution order. The panel held that the plea agreement provided sufficient information from which the defendant could have derived an accurate estimate of the amount of restitution for which he was liable, and rejected the argument that the restitution order is an illegal sentence.

The panel rejected the defendant's challenges to the enforceability of the appeal waiver as to the forfeiture order. The panel explained that one can validly waive the right to appeal a forfeiture order issued as part of the sentence regardless of whether the plea agreement provides the defendant with a reasonably accurate estimate of the amount of forfeiture or whether the defendant was given adequate notice before a district court determined that amount.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Rejecting the defendant's arguments as to why the forfeiture order constitutes an illegal sentence as to which the appeal waiver is ineffective, the panel held:

(1) that the defendant received sufficient notice of the forfeiture order;

(2) that because the government sought a money judgment, not a forfeiture of specific property, the government was not required to follow the procedures applicable to its seeking of "substitute property" under 21 U.S.C. § 853(p) and Fed. R. Crim. P. 32.2(e);

(3) that forfeiture is not statutorily limited to amounts traceable to the three counts to which the defendant pleaded guilty – *i.e.*, his three specific uses of the wires or mail – but rather covers property, obtained by the defendant directly or indirectly, as a result of the commission of the mail fraud or wire fraud offense, which necessarily includes the fraudulent scheme as a whole; and

(4) that the forfeiture order did not violate *Apprendi v. New Jersey*.

**COUNSEL**

Martha Boersch (argued), Boersch Shapiro LLP, Oakland, California, for Defendant-Appellant.

Meredith Osborn (argued), Assistant United States Attorney; Barbara J. Valliere, Chief, Appellate Division; Brian J. Stretch, United States Attorney; United States Attorney's Office, San Francisco, California; for Plaintiff-Appellee.

**OPINION**

IKUTA, Circuit Judge:

Henry Lo appeals the district court's imposition of a restitution order and a forfeiture money judgment, both in the amount of $2,232,894, as part of his sentence for three counts of wire fraud and mail fraud to which he pleaded guilty. The district court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291. Because Lo validly waived his right to appeal, and none of the exceptions to such waivers are applicable, we dismiss this appeal.

I

On August 19, 2014, Henry Lo was indicted in district court for two different schemes to defraud: wire fraud in violation of 18 U.S.C. § 1343, and mail fraud in violation of 18 U.S.C. § 1341.

According to the indictment, Lo worked for Absolutely New, Inc. (ANI), a consumer goods company headquartered in San Francisco, from 2007 until 2010. Lo "knowingly and

with intent to defraud" devised and executed "a scheme and artifice to defraud ANI" that involved several different uses of the wires. From January 2008 until September 2010, Lo used about $1,300,000 from ANI bank accounts to purchase cashier's checks, and either deposited them in his personal account at the brokerage firm Charles Schwab & Co., Inc., or used them to make payments on his personal line of credit at Wells Fargo bank. In late 2010, Lo gained access to one of ANI's bank accounts, and from December 2010 until February 2012 (after Lo left the company), he directed almost $240,000 from that account into his own American Express account. From January 2010 to February 2012, Lo caused ANI to transfer around $550,000 to Lo's PayPal account. Finally, Lo also used a debit card linked to ANI's bank account to pay about $30,000 of his personal expenses. In total, Lo stole more than $2,000,000 from ANI.

The indictment detailed specific acts that constituted use of the wires to further Lo's scheme to defraud. Counts 1 through 12 recited specific instances (including the date and the dollar amount of the transfer) when Lo caused electronic payments from an ANI bank account to be made to Lo's American Express account through American Express's computer servers. Count 1 alleged that Lo made an "[e]lectronic payment in the amount of $26,750.00" on January 4, 2011. Counts 13 through 24 recited twelve additional instances when Lo caused electronic payments from his PayPal account to be transferred to one of his bank accounts. Count 13 alleged a "[t]ransfer in the amount of $2,000.00" on January 26, 2010.

The indictment also charged Lo with mail fraud, in violation of 18 U.S.C. § 1341. According to the indictment, from March 2013 to June 2013, Lo "knowingly and with the

intent to defraud" executed a scheme to steal money from his girlfriend, A.W. Lo persuaded A.W. to let him prepare her tax returns, and then convinced A.W. to pay her estimated taxes to the IRS by writing checks totaling more than $125,000 to a Schwab account in the name of Lo's wife. In connection with this scheme, Lo forged confirmation statements from Schwab which confirmed that her checks would be sent to the IRS on A.W.'s behalf. He sent these statements through the mail to A.W.

As with the wire fraud charges, the indictment also detailed the acts that constituted use of the mail to further Lo's scheme to defraud. Counts 26 through 29 recited four specific instances (including the date and the dollar amount) of forged confirmation statements from Schwab. Count 26 alleged: "Statement purporting to confirm Schwab's wire transfer of $50,000.00 to the IRS on behalf of A.W." on April 2, 2013.

The indictment contained a forfeiture allegation under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), stating that if convicted, Lo would forfeit to the United States "property constituting, and derived from, proceeds the defendant obtained directly and indirectly, as the result of those violations, including, but not limited to, the following real property or personal property." The listed property included one piece of real property and identified funds in various bank or brokerage accounts. The forfeiture allegation also stated that if any of the listed property was unavailable as a result of an act or omission by Lo, "any and all interest the defendant has in other property" would be forfeited to the United States under 21 U.S.C. § 853(p).

On November 20, 2014, Lo entered into a plea agreement with the government, in which he agreed to plead guilty to Counts 1, 13, and 26 of the indictment. Lo admitted he was guilty of the elements of both wire fraud and mail fraud, including that he knowingly participated in a scheme or plan to defraud. He also agreed that the maximum penalties included restitution and forfeiture.

In section 2 of the plea agreement, Lo agreed to the truth of the facts underlying his conviction. Among other things, Lo specified the precise dollar amount of funds he had stolen as part of his schemes to defraud. He admitted that he transferred $239,053 of ANI funds into his American Express account as part of the wire fraud scheme, that he transferred payments totaling $564,311 to the PayPal account that he controlled, that he used ANI funds to purchase $1,356,777 in cashier's checks that he deposited into his personal accounts, and that he made $30,330 in purchases using an ANI debit card for his personal expenses. Lo also agreed that he induced A.W. to write more than $125,000 in checks to a Schwab account in his wife's name as part of the mail fraud scheme. In total, Lo admitted to defrauding ANI and A.W. of at least $2,315,469.

The plea agreement included Lo's agreement to give up the rights he would otherwise have if he chose to proceed to trial. Section 4 of the plea agreement also contained an appeal waiver, which stated:

> I agree to give up my right to appeal my convictions, the judgment, and orders of the Court. I also agree to waive any right I have to appeal any aspect of my sentence, including

any orders relating to forfeiture and or restitution.

In Section 9, Lo agreed "to pay restitution for all the losses caused by all the schemes or offenses with which [he] was charged in this case," and he further agreed that restitution "will not be limited to the loss attributable to the counts to which [he is] pleading guilty." He continued, "I agree that the Court may order and I will pay restitution in an amount to be set by the Court, but in no event less than $1,700,000 to ANI and $46,189.54 to A.W., less any amounts paid by me to ANI or A.W. after the date of this Agreement." He also agreed that "any fine, forfeiture, or restitution imposed by the Court . . . will be immediately due and payable and subject to immediate collection by the government."

Before sentencing, the government made an application for a preliminary order of forfeiture. Its application stated that Lo's thefts from ANI and A.W. totaled at least $2,323,971, and accordingly that amount was subject to forfeiture.

At his change of plea hearing on November 20, 2014, the district court engaged Lo in a detailed colloquy as required by Rule 11 of the Federal Rules of Criminal Procedure. Lo stated that the plea agreement was voluntary and that he understood and agreed to its terms. Further, Lo stated that he understood that the terms in the plea agreement "are merely recommendations" to the court, and that the court could impose a sentence that was more severe than he anticipated, without letting him withdraw his plea. During the course of the Rule 11 colloquy, Lo reaffirmed several times his understanding that the district court could impose a sentence

that was different or more severe than he had been told. Lo admitted that he had engaged in schemes to defraud both ANI and A.W. and that he had fraudulently obtained over $2.2 million. Lo stated that he understood that the court would order restitution of at least $1,700,00 to ANI and at least $46,190 to A.W.

The court also addressed the appeal waiver and asked Lo:

> Now, do you also understand that under some circumstances you or the government would have the right to appeal any sentence that I impose, but because of the agreement that you've entered into in entering a plea of guilty you will have waived or given up your right to appeal or collaterally attack all or part of your sentence?

Lo responded "yes" to this question.

At the conclusion of the sentencing proceedings, the district court sentenced Lo to 70 months imprisonment. The district court interpreted the government's forfeiture application as seeking a money judgment, and ordered a forfeiture money judgment in the amount of $2,232,894. The district court also ordered Lo to pay $2,232,894 in restitution to ANI and A.W. Pursuant to the plea agreement, the district court dismissed the remaining counts. Lo timely appealed.

## II

Before addressing Lo's claims, we must first address the government's argument that Lo waived his right to appeal any aspect of the sentence by agreeing to an appeal waiver in

his plea agreement. "We review the question whether a defendant has validly waived his statutory right to appeal de novo." *United States v. Nguyen*, 235 F.3d 1179, 1182 (9th Cir. 2000), *abrogated on other grounds by United States v. Rahman*, 642 F.3d 1257, 1259 (9th Cir. 2011). We also review the district court's interpretation of statutes and the federal rules de novo. *See United States v. Mancuso*, 718 F.3d 780, 798 (9th Cir. 2013). Factual findings are reviewed for clear error. *United States v. Alcaraz-Garcia*, 79 F.3d 769, 772 (9th Cir. 1996).

A

Plea agreements, including appeal waivers, are essentially contracts that we interpret according to contract principles. *United States v. Gerace*, 997 F.2d 1293, 1294 (9th Cir. 1993). "This customary reliance on contract law applies to interpretation of an appeals waiver within a plea agreement, and we will generally enforce the plain language of a plea agreement if it is clear and unambiguous on its face." *United States v. Jeronimo*, 398 F.3d 1149, 1152 (9th Cir. 2005), *overruled on other grounds by United States v. Jacobo Castillo*, 496 F.3d 947, 957 (9th Cir. 2007) (en banc). As a general rule, "[a] waiver of appellate rights 'is enforceable if (1) the language of the waiver encompasses his right to appeal on the grounds raised, and (2) the waiver is knowingly and voluntarily made.'" *United States v. Medina-Carrasco*, 815 F.3d 457, 461 (9th Cir. 2016) (quoting *Jeronimo*, 398 F.3d at 1153). "We will enforce a valid waiver even if the claims that could have been made on appeal absent that waiver appear meritorious, because '[t]he whole point of a waiver . . . is the relinquishment of claims *regardless* of their merit.'" *Id.* at 462–63 (alterations in original) (quoting *Nguyen*, 235 F.3d at 1184).

We begin with the question whether the appeal waiver was knowingly and voluntarily made. *United States v. Michlin*, 34 F.3d 896, 898 (9th Cir. 1994). In making this determination, we look "to the circumstances surrounding the signing and entry of the plea agreement to determine whether the defendant agreed to its terms knowingly and voluntarily." *United States v. Baramdyka*, 95 F.3d 840, 843 (9th Cir. 1996). A district court is required to inform the defendant of "the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence," *see* Fed. R. Crim. P. 11(b)(1)(N), and we have held that similar procedures are "sufficient to find a knowing and voluntary waiver," *United States v. Watson*, 582 F.3d 974, 987 (9th Cir. 2009) (quoting *Baramdyka*, 95 F.3d at 844).[1] The failure of a court to do so, however, is not plain error where evidence in the record shows that the defendant waived appellate rights knowingly and voluntarily. *See id.* (holding there was no plain error in failing to comply with Rule 11(b)(1)(N) given the otherwise "diligent colloquy" and the defendant's "written assurances that he adequately reviewed the terms of the plea agreement"); *see also United States v. Ma*, 290 F.3d 1002, 1005 (9th Cir. 2002) (holding there was no plain error in failing to comply with Rule 11(b)(1)(N) where "[t]he whole record" disclosed that the defendant knowingly and voluntarily waived her right to appeal). As a general rule, if the plea agreement "is voluntary, and taken in compliance

---

[1] The requirement that the court advise the defendant of the terms of any plea-agreement provision waiving the right to appeal was added to Rule 11 in 1999. *See* Fed. R. Crim. P. 11(b)(1)(N) (formerly Fed. R. Crim. P. 11(c)(6) (1999)). To the extent our decisions considering pre-amendment colloquies indicate that a district court need not inform the defendant of the terms of an appeal waiver, *see United States v. Anglin*, 215 F.3d 1064, 1066 (9th Cir. 2000); *United States v. DeSantiago-Martinez*, 38 F.3d 394, 395 (9th Cir. 1992), they are no longer good law.

with Rule 11, then the waiver of appeal must be honored" because "waivers of appeal must stand or fall with the agreement of which they are a part." *United States v. Portillo-Cano*, 192 F.3d 1246, 1250 (9th Cir. 1999) (internal quotation marks omitted).

While a defendant must waive the right to appeal knowingly and voluntarily, the defendant need not be aware of possible grounds of appeal. *See United States v. Navarro-Botello*, 912 F.2d 318, 320 (9th Cir. 1990) (upholding an appeal waiver as knowing and voluntary because the defendant "knew he was giving up possible appeals, even if he did not know exactly what the nature of those appeals might be"). Further, a defendant can validly waive appeal rights without being informed of the severity of the sentence that will be imposed; indeed, we have upheld waivers where the defendant's counsel inaccurately informed the defendant of the plea's consequences, as long as the inaccuracy was not a "gross mischaracterization." *See Jeronimo*, 398 F.3d at 1155–57; *see also United States v. Guillen*, 561 F.3d 527, 529 (D.C. Cir. 2009) ("An anticipatory waiver — that is, one made before the defendant knows what the sentence will be — is nonetheless a knowing waiver if the defendant is aware of and understands the risks involved in his decision."). In short, where the plea agreement itself is valid, *see Portillo-Cano*, 192 F.3d at 1250, and the defendant "is aware of his right to appeal . . . and . . . expressly waives that right," the appeal waiver is knowing and voluntary, *DeSantiago-Martinez*, 38 F.3d at 395.

If we determine that the appeal waiver is knowing and voluntary, the second step is to "focus . . . upon the language of the waiver to determine its scope." *Baramdyka*, 95 F.3d at 843. "The scope of a knowing and voluntary waiver is

demonstrated by the express language of the plea agreement." *United States v. Leniear*, 574 F.3d 668, 672 (9th Cir. 2009) (quoting *Anglin*, 215 F.3d at 1066). Because we construe plea agreements according to the principles of contract law, any ambiguities in the contract language are construed against the drafter, which in this case is the government. *Anglin*, 215 F.3d at 1065–67. Where the appeal waiver is valid, it will bar a defendant from bringing a number of possible claims that fall within its scope, including claims that the district court abused its discretion in denying the defendant's motion to withdraw his guilty plea, *see Jeronimo*, 398 F.3d at 1154, that the district court incorrectly applied the Sentencing Guidelines, *see Medina-Carrasco*, 815 F.3d at 462; *Michlin*, 34 F.3d at 901, that the district court lacked personal jurisdiction over the defendant, *see Baramdyka*, 95 F.3d at 844, and that the district court abused its discretion in imposing a special geographical condition of supervised release, *see United States v. Watson*, 582 F.3d 974, 980, 987 (9th Cir. 2009), among others.

Nevertheless, we have carved out a number of exceptions to the rule that a defendant can waive the right to appeal various claims. *See United States v. Bibler*, 495 F.3d 621 (9th Cir. 2007). Among other exceptions, we have held that "a waiver of the right to appeal would not prevent an appeal where the sentence imposed is not in accordance with the negotiated agreement." *Navarro-Botello*, 912 F.2d at 321; *United States v. Martinez*, 143 F.3d 1266, 1271 (9th Cir. 1998). We have also held that "[a] waiver of the right to appeal does not bar a defendant from challenging an illegal sentence." *Watson*, 582 F.3d at 977; *United States v. Gordon*, 393 F.3d 1044, 1050 (9th Cir. 2004). We defined "illegal sentence" in this context to mean "one not authorized by the judgment of conviction or in excess of the permissible

statutory penalty for the crime." *United States v. Vences*, 169 F.3d 611, 613 (9th Cir. 1999) (internal quotation marks omitted); *see also Jeronimo*, 398 F.3d at 1153 n.2 (cataloguing exceptions to appeal waivers).

We have also developed a special notice requirement for appeal waivers relating to restitution orders, holding that in order for that waiver to be valid a defendant must be "given a reasonably accurate estimate of the amount of the restitution order to which he is exposed" at the time the defendant agrees to waive the appeal. *See United States v. Tsosie*, 639 F.3d 1213, 1217 (9th Cir. 2011). The development of this notice requirement is relevant to our analysis. "[U]ntil 1982 restitution could not be imposed as a separate component of a federal criminal sentence, but only as a condition of probation pursuant to the Federal Probation Act of 1925." Catharine M. Goodwin, *Looking at the Law: The Imposition of Restitution in Federal Criminal Cases*, Fed. Probation, Dec. 1998, at 95, 95. The Federal Probation Act (FPA), 18 U.S.C. § 3651, *repealed by* Pub. L. No. 98-473, tit. II, § 212(a)(2), 98 Stat. 1837, 1987 (1984), allowed restitution only "for actual damages or loss caused by the offense for which conviction was had." 18 U.S.C. § 3651. Despite this narrow language, we held that a court could order restitution for additional amounts if the defendant stipulated to those amounts in a plea agreement and the "plea bargain is fully explored in open court." *Phillips v. United States*, 679 F.2d 192, 194 (9th Cir. 1982).

In 1982, Congress enacted the Victim and Witness Protection Act (VWPA), 18 U.S.C. §§ 3663–3664, which for the first time authorized restitution as "a separate component of a federal criminal sentence," Goodwin, *Looking at the Law*, *supra*, at 95, and not just as a condition of probation.

Applying the precedent developed in the FPA context to this new context, we held that a court could order restitution only for: (1) "actual damages" as judicially determined, but only after notice to the defendant; (2) an amount stipulated to in a plea agreement[2]; or (3) the amount "alleged in the counts of the indictment for which the conviction is had." *United States v. Parrott*, 992 F.2d 914, 917 (9th Cir. 1993). In light of *Parrott*'s formulation of this rule, we subsequently concluded that a court exceeded its authority in ordering restitution for an amount that was neither clearly stipulated to in a plea agreement nor based on a judicial determination of actual damages after adequate notice to the defendant. *United States v. Phillips*, 174 F.3d 1074, 1076 (9th Cir. 1999).

In 1996, Congress enacted another restitution statute, the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3663A (the statute at issue in this case), to require restitution for certain crimes. We continued applying the rule we had developed in *Parrott* to this new statute. *See Gordon*, 393 F.3d at 1048; *Tsosie*, 639 F.3d at 1217. In *Gordon*, a defendant agreed to pay approximately $14.5 million in restitution, but the court ordered the defendant to pay restitution totaling over $27 million. The court ordered the higher amount of restitution without giving prior notice to the defendant. We held that the defendant's waiver of his right to appeal the restitution order was not enforceable because the defendant "lacked sufficient notice to waive his right to appeal." 393 F.3d at 1050. Similarly, in *Tsosie*, the plea agreement contained an appeal waiver and provided that the

---

[2] A 1990 amendment to the VWPA expressly provided that a court could order such an amount. *See* 18 U.S.C. § 3663(a)(3) ("The court may also order restitution in any criminal case to the extent agreed to by the parties in a plea agreement.").

defendant would make restitution as determined by the court. 639 F.3d at at 1216. At sentencing, the district court ordered the defendant to pay $31,994 in restitution to the victim's mother. *Id.* at 1217. No prior notice had been given to the defendant. We held that because the defendant's plea agreement did not set forth "a reasonably accurate estimate of the amount of the restitution order to which he is exposed," *id.*, the defendant lacked sufficient notice to waive his right to appeal the restitution order, and therefore the appeal waiver was unenforceable with respect to the restitution amount, *id.* at 1218. We explained that "some precision in the plea agreement is necessary to have a knowing appeal waiver" in the restitution context because "there is neither a statutory limit nor any guidelines covering the amount of restitution orders." *Id.* at 1219. Further, the amount of restitution may "depend on a request or submission by a third party," the defendant may be unable to predict whether there will be a request for restitution or the amount of such a request, and therefore a defendant may plead guilty "believing that he will not owe any restitution, when, in fact, the sky is the only limit to his potential exposure." *Id.*

B

We now apply these principles to Lo's argument that the appeal waiver does not bar his appeal of either the restitution order or the forfeiture order.

As a preliminary matter, the circumstances surrounding the signing and entry of the plea agreement support the conclusion that Lo entered into the agreement knowingly and voluntarily. The district court reviewed the plea agreement thoroughly during the Rule 11 colloquy, which included bringing the appeal waiver to Lo's attention. The court also

warned Lo that the sentence could be greater than he had been told. As a general rule, these factors indicate that the plea agreement was voluntary and in compliance with Rule 11.**³** In addition, the scope of Lo's appeal waiver clearly includes restitution and forfeiture; it states "I also agree to waive any right I have to appeal any aspect of my sentence, including any orders relating to forfeiture and or restitution." Under these circumstances, the appeal waiver is enforceable absent an applicable exception.

Accordingly, we turn to Lo's arguments that a number of different exceptions are applicable here. We begin with his claim that the appeal waiver does not bar his appeal of the restitution order because the plea agreement did not give Lo "a reasonably accurate estimate of the amount of the restitution order to which he is exposed" at the time he agreed to the appeal waiver, *Tsosie*, 639 F.3d at 1217, and therefore his waiver was not knowing and voluntary. We disagree. Our examination of the plea agreement shows that it provided sufficient information from which Lo could have derived an accurate estimate of the amount of restitution for which he was liable. The plea agreement directly identified the minimum amount of restitution Lo would be obliged to pay: Lo agreed "that the Court may order and I will pay restitution in an amount to be set by the Court, but in no event *less than* $1,700,000 to ANI and $46,189.54 to A.W., less any amounts paid by me to ANI or A.W. after the date of this Agreement"

---

**³** In his reply brief, Lo argues that the appeal waiver is invalid because the district court failed to apprise him of forfeiture at the plea colloquy in violation of Rule 11. Because Lo did not raise this argument in his opening brief, it is waived. *See Omega Envtl., Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1167 (9th Cir. 1997) (declining "to address an argument raised for the first time in the reply brief").

(emphasis added). The plea agreement defined the additional amounts of restitution that Lo would be obliged to pay. It first stated that Lo would "pay restitution for all the losses caused by all the schemes or offenses with which [he] was charged in this case," and that restitution "will not be limited to the loss attributable to the counts to which [he is] pleading guilty." It set forth the exact amount of losses caused by each of Lo's fraudulent schemes. In total, the plea agreement stated that Lo had defrauded ANI and A.W. of $2,315,469. Accordingly, the plea agreement provided a reasonably accurate estimate of the amount of restitution to which Lo was exposed, and therefore his appeal waiver was knowing and voluntary.

Lo next argues that his appeal waiver does not bar him from challenging the restitution order because "the sentence imposed is not in accordance with the negotiated agreement," *Navarro-Botello*, 912 F.2d at 321. According to Lo, he agreed to pay only $1,700,000 to ANI and $46,190 to A.W., and the restitution order issued by the district court exceeded that amount. The plain language of the plea agreement belies this argument; the agreement clearly states that the $1,700,000 and $46,189 amounts were the minimums that Lo would have to pay rather than the maximum agreed-upon restitution amount. The district court's imposition of a larger amount of restitution was not in conflict with the plea agreement.

Finally, Lo argues that he may challenge the restitution order because it is an illegal sentence. *See Watson*, 582 F.3d at 977. According to Lo, the government presented no evidence that the amounts at issue constituted losses to a victim that were directly caused by Lo's offenses, and

without such evidence, the court may not impose a restitution order under the MVRA.

Again, we reject this argument. An award of restitution is illegal only if it is not authorized for the offense at issue or is in excess of the amount allowed by statute. *Vences*, 169 F.3d at 613. In this case, the award of restitution was not only authorized but in fact mandatory. Under the MVRA, a district court must order a defendant who has committed specified offenses, including "any offense committed by fraud or deceit," 18 U.S.C. § 3663A(c)(1)(A)(ii), to make restitution to the victim of the offense. *United States v. Anderson*, 741 F.3d 938, 951 (9th Cir. 2013). A "victim" is defined as "any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." 18 U.S.C. § 3663A(a)(2). Lo was convicted of wire fraud and mail fraud, which are included in the class of offenses for which restitution must be ordered. *See* 18 U.S.C. § 3663A(c)(1)(A)(ii); *United States v. Thomsen*, — F.3d —, 2016 WL 4039711, at *12 (9th Cir. July 28, 2016) (mail fraud); *United States v. Booth*, 309 F.3d 566, 575–76 (9th Cir. 2002) (wire fraud). Further, Lo agreed in the plea agreement that ANI and A.W. were directly harmed by Lo's wire fraud and mail fraud schemes.[4] Under the facts admitted by Lo,

---

[4] In the factual basis for the plea agreement, Lo admitted that he made the following unauthorized transfers: he "caused $239,052.76 of ANI funds to be paid to [his] American Express account" for his personal expenses; he "caused ANI to make payments totaling $564,310.54 to a PayPal account" that Lo registered and controlled; he used ANI funds to purchase $1,356,777 in cashier's checks that he deposited into his personal accounts; and he used an ANI debit card to make unauthorized personal purchases totaling $30,330. Lo also admitted to causing A.W. to pay more than $125,000 in personal checks to Lo's Schwab account, believing the funds were being sent to the IRS.

both ANI and A.W. constituted "victims" of his scheme to defraud.

Nor was the restitution award in excess of the amount allowed by the MVRA. The offenses here, mail fraud and wire fraud, each contain the element that the alleged acts be completed in furtherance of a scheme to defraud.[5] The MVRA provides that "in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity," restitution is owed to "any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." 18 U.S.C. § 3663A(a)(2). Accordingly, when the crime of conviction is mail fraud or other crime requiring proof of a scheme, a court is authorized to order restitution "on related but uncharged conduct that is part of a fraud scheme," and is not limited to "the harm caused by the particular counts of conviction." *Thomsen*, — F.3d at — , 2016 WL 4039711, at \*12  (emphasis omitted) (quoting *In re Her Majesty the Queen in Right of Canada*, 785 F.3d 1273, 1276 (9th Cir. 2015) (per curiam)) (applying this rule to mail fraud); *see also Booth*, 309 F.3d at 575–76 (reaching the same conclusion with respect to wire fraud).

Here, Lo pleaded guilty to mail fraud and wire fraud, and agreed that the conduct alleged in each count of conviction furthered either the scheme to defraud ANI or the scheme to

---

[5] The essential elements of a wire fraud offense are "(1) the existence of a scheme to defraud; (2) the use of wire, radio, or television to further the scheme, and (3) a specific intent to defraud." *United States v. Jinian*, 725 F.3d 954, 960–61 (9th Cir. 2013). Similarly, the essential elements of a mail fraud offense include: (1) a scheme to defraud; (2) materiality of the statements made in furtherance of the scheme; (3) an intent to defraud; and (4) use of the mails. *United States v. Woods*, 335 F.3d 993, 997 (9th Cir. 2003).

defraud A.W.  Lo also agreed that the restitution order for his offenses would include all losses caused by the two fraudulent schemes as a whole.  Lo acknowledged that his fraudulent conduct, including the specific acts alleged in the counts that were dismissed, directly harmed ANI and A.W., and agreed that the dollar amounts specified in the plea agreement represented the losses ANI and A.W. had suffered as a result of his schemes.  Accordingly, the plea agreement itself establishes that the transfers of funds from ANI and A.W. to Lo constituted losses to victims directly caused by Lo's fraudulent schemes.  Lo again admitted these factual allegations at his change of plea hearing.  Therefore, the district court did not err in ordering restitution for all losses caused by the schemes to defraud, and the order was not illegal.

## III

We now turn to Lo's challenges to the forfeiture order.  Although a valid appeal waiver would normally bar Lo's challenge, Lo claims that two exceptions to the general rule are applicable.

## A

Lo first argues that the notice requirement applicable to restitution orders is equally applicable to forfeiture orders, and therefore his waiver of the right to appeal the forfeiture order was unenforceable because the plea agreement did not give Lo "a reasonably accurate estimate" of the amount of forfeiture to which he was exposed.  We disagree.  As our prior discussion indicated, we based our rule in the restitution context on statutory language allowing restitution only for "actual damages or loss caused by the offense for which

conviction was had," 18 U.S.C. § 3651 (repealed), and subsequent interpretations requiring restitution amounts to be judicially determined after notice to the defendants, *Parrott*, 992 F.2d at 917, or to be a "reasonably accurate estimate" stipulated to in the plea agreement, *Tsosie*, 639 F.3d at 1217. There is no analogous statutory history limiting forfeiture to "actual damages or loss," and the forfeiture statutes at issue here are much broader than the relevant restitution statutes. *See* 18 U.S.C. § 981(a)(1)(C) (providing that "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to" various offenses specified in the statute "is subject to forfeiture to the United States"); *see also United States v. Newman*, 659 F.3d 1235, 1241 (9th Cir. 2011) ("Criminal forfeiture is . . . separate from restitution, which serves an entirely different purpose.").

Further, our rationale for creating an exception unique to restitution orders is not applicable to forfeiture orders. *See Tsosie*, 639 F.3d at 1219. Unlike restitution, criminal forfeiture does not depend on contingent requests and submissions by third parties that may be impossible to predict. *Id.* Rather, the government must notify the defendant of its intent to seek forfeiture by including an allegation in the indictment or information, and if the defendant is convicted, the court must order forfeiture of all proceeds that constitute or are derived from the offense. *See* 28 U.S.C. § 2461(c), 18 U.S.C. § 981; *see also Newman*, 659 F.3d at 1239. "[T]he district court must impose criminal forfeiture in the amount of the 'proceeds' of the crime." *Id.* Under the forfeiture statutes, a defendant can predict both the application of forfeiture and its amount. Therefore, an appeal waiver can validly waive the right to appeal a forfeiture order issued as part of the sentence regardless of whether the plea agreement provides the defendant with a reasonably accurate

estimate of the amount of forfeiture or whether the defendant was given adequate notice before a district court determined that amount. This rule is consistent with the general rule, outside the restitution context, that a defendant may waive the right to appeal without knowing the severity of the sentence that may be imposed. *Jeronimo*, 398 F.3d at 1155. We therefore decline to apply *Tsosie*'s restitution-specific rule to the appeal of a forfeiture order.

## B

Second, Lo raises four arguments as to why the forfeiture order constitutes an illegal sentence to which the appeal waiver is ineffective: (1) the government did not provide the notice required by statute; (2) the court did not follow the procedure required to seek forfeiture of "substitute property" pursuant to 21 U.S.C. § 853(p); (3) the amount of the forfeiture order exceeded the amounts associated with his counts of conviction; and (4) the forfeiture order violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000). We consider each argument in turn.

### 1

Lo's first argument is that the forfeiture order is not authorized by statute because the government did not provide sufficient notice that it was seeking a forfeiture money judgment.

To evaluate this claim, we begin by considering the statutory framework for forfeiture orders. Under 28 U.S.C. § 2461(c), if a person is charged with a criminal offense for which forfeiture is authorized, "the Government may include notice of the forfeiture in the indictment or information

pursuant to the Federal Rules of Criminal Procedure." If the government provides such notice of the forfeiture in the indictment, and the defendant is subsequently convicted of the offense that gives rise to the forfeiture, "the court shall order the forfeiture of the property as part of the sentence in the criminal case pursuant to the Federal Rules of Criminal Procedure . . . ." *Id.*

The federal rule referenced in § 2461(c) is Rule 32.2 of the Federal Rules of Criminal Procedure. *Newman*, 659 F.3d at 1242. Rule 32.2(a) sets forth the requirements for notice of forfeiture. It provides that a court may not enter an order of forfeiture unless the indictment or information contains notice that the government will seek forfeiture. Fed. R. Crim. P. 32.2(a). However, "[t]he indictment . . . need not identify the property subject to forfeiture or specify the amount of any forfeiture money judgment that the government seeks." *Id*. Rule 32.2 also specifies how the court shall order the forfeiture of property. The government has several options: it can "seek the forfeiture of specific property, or the government may seek a money judgment." *Newman*, 659 F.3d at 1242. "If the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay." Fed. R. Crim. P. 32.2(b). In addition, where property constituting the proceeds of an offense cannot be obtained, the government may seek "substitute property" as allowed under Rule 32.2(e) and 21 U.S.C. § 853(p).

Section 2461 also references 21 U.S.C. § 853, and states that the procedures in that statute "apply to all stages of a criminal forfeiture proceeding" except for an exception that is inapplicable here. Section 853(p) provides a procedure for the forfeiture of substitute property: pursuant to this section,

"if any property described in [§ 853(a), defining property subject to forfeiture], as a result of any act or omission of the defendant," either cannot be located or has been transferred to a third party, placed beyond the jurisdiction of the court, substantially diminished in value, or commingled with other property, *see* 21 U.S.C. § 853(p)(1)(A)–(E), the court shall order forfeiture of "substitute property," defined as "any other property of the defendant, up to the value" of the original property subject to forfeiture. 21 U.S.C. § 853(p)(1), (2).

Although 28 U.S.C. § 2461 does not expressly reference 18 U.S.C. § 981, we have held that "§ 2461(c) permits the government to seek criminal forfeiture whenever civil forfeiture is available and the defendant is found guilty of the offense." *Newman*, 659 F.3d at 1239. Therefore, where the government includes a criminal forfeiture allegation pursuant to 18 U.S.C. § 981 and 28 U.S.C. § 2461(c), forfeiture is authorized under § 981 even though that section typically governs civil, rather than criminal, forfeiture. *Newman*, 659 F.3d at 1239–40. Section 981(a)(1)(C) provides that "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense," is subject to forfeiture.**6** "Proceeds" is defined

---

**6** 18 U.S.C. § 981(a)(1)(C) does not directly reference 18 U.S.C. § 1341 or 18 U.S.C. § 1343, but does so indirectly. The section states that property derived from proceeds traceable to an offense constituting "'specified unlawful activity' (as defined in section 1956(c)(7) of this title)" is subject to forfeiture. *Id.* Section 1956(c)(7) defines "specified unlawful activity" in part as "any act or activity constituting an offense" listed in 18 U.S.C. § 1961(1). Section 1961(1), in turn, lists both mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343, among other offenses. *See also United States v. Silvious*, 512 F.3d 364, 369 (7th Cir.

in part as "property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense." 18 U.S.C. § 981(a)(2)(A).

Having reviewed the statutory framework, we now turn to Lo's argument that the court exceeded its authority in issuing a forfeiture order because Lo was not given the notice required by 28 U.S.C. § 2461(c) and 18 U.S.C. § 981(a)(1)(C). According to Lo, the indictment's forfeiture allegation was deficient because it stated that if convicted, Lo would forfeit property "including, but not limited to," a list of specified real and personal property, and did not state that Lo would be subject to a money judgment. We disagree. The forfeiture allegation met the requirement in 28 U.S.C. § 2461(c) that the government "include notice of the forfeiture in the indictment or information pursuant to the Federal Rules of Criminal Procedure." It also met the requirement of Rule 32.2(a), that the indictment contain "notice to the defendant that the government will seek the forfeiture of property as part of any sentence in accordance with the applicable statute." The additional information in the forfeiture allegation that the property Lo would forfeit included, but was not limited to, specific property did not cause the notice to be insufficient for purposes of 28 U.S.C. § 2461 or Rule 32.2(a). The government is not legally required to notify a defendant that it is seeking a money judgment; indeed, Rule 32.2(a) states that the government "*need not* identify the property subject to forfeiture or specify

2008); *United States v. Foley*, 508 F.3d 627, 635 (11th Cir. 2007); *United States v. Jennings*, 487 F.3d 564, 585 (8th Cir. 2007); *United States v. Vampire Nation*, 451 F.3d 189, 200 (3d Cir. 2006).

the amount of a money judgment." Fed. R. Crim. P. 32.2(a) (emphasis added). Because Lo was not entitled to notification that the government was seeking specific property, the government's decision to seek a money judgment instead of the listed property does not render the government noncompliant with the statute. In any event, we disagree with Lo's argument that the allegation's failure to specify that the government might seek a money judgment made it misleading, given that the allegation made clear that forfeiture was "not limited to" the property listed in the indictment. We conclude that Lo received sufficient notice of the forfeiture order.

2

We next turn to Lo's argument that the government was required to seek forfeiture of "substitute property" pursuant to 21 U.S.C. § 853(p) and follow the procedures set forth in that statute, and that its failure to do so made the forfeiture order illegal. Again, this argument fails. As explained in *Newman*, the procedural and substantive requirements of Rule 32.2(e) and § 853(p) apply "before the court may order the forfeiture of substitute property." *Newman*, 659 F.3d at 1242. But where the government does not seek substitute property under Rule 32.2(e), but seeks only "a money judgment as a form of criminal forfeiture under Rule 32.2(b)," those requirements are inapplicable. "When the government seeks a money judgment, Rule 32.2(b) does not permit the court to do anything other than 'determine the amount of money that the defendant will be ordered to pay,' which is specified by statute." *Id.* at 1242. Lo attempts to distinguish *Newman* on the ground that the defendant in that case had agreed to a money judgment in his plea agreement. *See id.* at 1238. *Newman* did not rely on that fact; instead, it relied solely on

the text of 28 U.S.C. § 2461(c) and Rule 32.2 to conclude that forfeiture money judgments and forfeiture orders of specific property are subject to different procedural requirements. *Id.* at 1242.

Here the government sought a money judgment, not forfeiture of specific property, in its application for a preliminary order of forfeiture. Therefore, under *Newman*, the government was not required to follow the procedures applicable to its seeking of substitute property. *See* 659 F.3d at 1242–43.

3

Lo argues next that the district court's forfeiture order was an illegal sentence because the amount of forfeiture is statutorily limited to proceeds that constitute or are derived from the counts to which he pleaded guilty, Counts 1, 13, and 26. The proceeds associated with those two acts of wire fraud and one act of mail fraud, as set forth in the indictment, added up to $78,750. Lo therefore argues that the district court's forfeiture order of $2,232,894 exceeded its statutory authority.

The Seventh Circuit rejected an almost identical argument in *United States v. Venturella*, 585 F.3d 1013, 1016–18 (7th Cir. 2009). In that case, the government alleged that the defendants committed mail fraud by fraudulently obtaining government benefits in two different mail fraud schemes (the first scheme was comprised of counts 1–26, and the second scheme was comprised of counts 27–30). For each of the two schemes, the indictment first gave the factual background and explained the overall scheme. It then provided "a chart that specifies the mailings corresponding with each count, which

the defendants made 'for the purpose of executing' the fraudulent scheme." *Id.* at 1017. The indictment also included a forfeiture charge under 18 U.S.C. § 981(a)(1)(c) and 28 U.S.C. § 2461(c) of $114,313 for the first scheme, and $301,491 for the second scheme. *Id.* The defendants entered into a plea agreement and pled guilty to one of the counts which specified a mailing involving $478. The other charges were dismissed pursuant to the agreement. *Id.* at 1016. On appeal, the defendants claimed that the extent of their criminal forfeiture must be limited to the amount associated with the count of conviction, or $478.

The Seventh Circuit rejected this argument. First, it noted that the indictment associated each individual mailing with the overall scheme. In light of this structure, the court concluded that each count included the entire scheme to defraud the government, "and each mailing was a separate act in furtherance of that scheme." *Id.* at 1017. By pleading guilty to one count of mail fraud that included the entire fraudulent scheme, the defendants in effect pleaded guilty to the entire mail fraud scheme. *Id.* Second, the Seventh Circuit provided a close analysis of the relevant forfeiture statutes, and concluded that "contrary to the defendants' claims, forfeiture is not limited solely to the amounts alleged in the count(s) of conviction." *Id.* As the Seventh Circuit explained, "18 U.S.C. § 981(a)(1)(C) authorizes forfeiture for '[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to' the commission of certain specified offenses, including mail fraud," and "18 U.S.C. § 981(a)(2)(A) defines 'proceeds' as 'property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense.'" *Id.* (alteration in original). The

court concluded that "[t]he plain language of section 981(a)(1)(C) along with the expansive definition of 'proceeds' indicates that the statute contemplates the forfeiture of property other than the amounts alleged in the count(s) of conviction." *Id.* The court therefore held that a forfeiture amount of $114,313 was proper. *Id.* at 1017–18.

We agree with the Seventh Circuit's statutory analysis, and conclude that it is equally applicable here. The language of the forfeiture statute broadly makes forfeitable any property, obtained by the defendant directly or indirectly, as a result of the commission of a mail fraud or wire fraud offense. *See* 18 U.S.C. § 981(a)(1)(C), (a)(2)(A). The offenses here, mail fraud and wire fraud, each contain the element that the alleged acts be completed in furtherance of a scheme to defraud. *See United States v. Jinian*, 725 F.3d 954, 960–61 (9th Cir. 2013) (wire fraud); *United States v. Woods*, 335 F.3d 993, 997 (9th Cir. 2003) (mail fraud). Because the proceeds from a mail fraud or wire fraud offense include funds obtained "as the result of the commission of the offense," and the commission of such a mail fraud or wire fraud offense necessarily includes a fraudulent scheme as a whole, the proceeds of the crime of conviction consist of the funds involved in that fraudulent scheme, including additional executions of the scheme that were not specifically charged or on which the defendant was acquitted. *See United States v. Capoccia*, 503 F.3d 103, 117–18 (2d Cir. 2007) (stating that, "[w]here the conviction itself is for executing a scheme, engaging in a conspiracy, or conducting a racketeering enterprise," the proceeds for purposes of forfeiture include the proceeds of "that scheme, conspiracy, or enterprise"); *see also United States v. Hasson*, 333 F.3d 1264, 1279 (11th Cir. 2003) (holding, for purposes of forfeiture, that "[i]n determining what transactions involved the proceeds of mail

and wire fraud, the jury was not restricted to the three substantive counts of wire fraud on which it returned a guilty verdict" and could consider evidence of fraud adduced in support of an additional money laundering count).

In this case, the indictment charged Lo with a scheme to defraud ANI of more than $2,000,000 through use of the wires. Each individual count included both the scheme to defraud and a specific use of the wires as an act in furtherance of that scheme. The same is true with respect to the scheme to defraud A.W. of more than $125,000 through use of the mails: each individual count included the scheme to defraud and identified a specific use of the mail in furtherance of that scheme. Under 18 U.S.C. § 981(a)(2)(A), the "proceeds" from Counts 1, 13, and 26 to which Lo pleaded guilty include all funds obtained "as the result of the commission" of those offenses. Because the commission of those wire fraud and mail fraud offenses necessarily involved execution of the relevant fraudulent schemes, *see Jinian*, 725 F.3d at 960–61; *Woods*, 335 F.3d at 997, the court was authorized to order forfeiture of the funds obtained from those schemes, including from the additional executions of the schemes alleged in the indictment and admitted in the plea agreement. *See Venturella*, 585 F.3d at 1017.

In arguing that he should be held responsible only for amounts traceable to his three specific uses of the wires or mail, Lo relies on *United States v. Garcia-Guizar*, 160 F.3d 511 (9th Cir. 1998). This reliance is misplaced. In *Garcia-Guizar*, the government executed search warrants at the defendant's storage locker, and seized sixteen packages of marijuana and a bundle of cash (amounting to $43,070) in a brown paper bag. *Id.* at 515. Some $4,300 of the cash in the bag had serial numbers showing them to be "pre-recorded

government funds from . . . the methamphetamine sales." *Id.*
The government sought the entire bag of cash as the
"proceeds" the defendant "obtained, directly or indirectly" as
the result of the drug offenses. 21 U.S.C. § 853(a)(1). The
defendant was convicted and the jury returned a verdict that
the entire bag of cash was subject to forfeiture. We reversed,
holding that the government had proven only that the $4,300
was proceeds of the conduct for which the defendant was
actually convicted. *Id.* at 519. Lo argues that by analogy,
only the amounts traceable to the three counts to which he
pleaded guilty, i.e., his three specific uses of the wires or
mail, are subject to forfeiture.

We disagree. *Garcia-Guizar* is inapposite because in that
case, the government was not seeking a money judgment, but
rather took the position that the bag of cash found in the
locker was the proceeds of the drug offenses. But the
government produced no evidence that anything other than
the $4,300 in bills with prerecorded serial numbers
constituted the proceeds of a drug offense. Nor did the
government seek a money judgment on the grounds that the
proceeds of the defendant's drug offense amounted to
$43,070. By contrast, in our case, the government established
the amount of proceeds subject to forfeiture and sought a
money judgment, and so need only prove that the dollar
amount constitutes the proceeds of the wire and mail fraud
offenses. *See Newman*, 659 F.3d at 1242; *see also
Venturella*, 585 F.3d at 1018 (finding that *Garcia-Guizar* did
not require that a money judgment be limited to the
individual transaction amounts specified in the counts of
conviction).

The district court therefore did not err in ordering a
forfeiture money judgment in the amount of proceeds that Lo

obtained as a result of his two fraudulent schemes. Nor did the district court clearly err in calculating that total to be $2,232,894, where the plea agreement, as well as the Presentencing Report, victim impact statements, and other evidence submitted as part of the district court's three sentencing proceedings all supported that amount. *See Newman*, 659 F.3d at 1244 ("The district court may rely on factual statements in the plea agreement.").

4

Lo next contends that the district court's forfeiture order was illegal because it violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000). According to Lo, the amount of a forfeiture order is a fact that increases his penalty, and therefore must be determined by the jury. We reject this argument.

In *Apprendi*, the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. The Court later clarified that *Apprendi* applies to criminal fines in *Southern Union Co. v. United States*. 132 S. Ct. 2344, 2350 (2012).

But the Supreme Court had previously developed a different rule applicable to forfeiture orders. In *Libretti v. United States*, the Court ruled that "the right to a jury verdict on forfeitability does not fall within the Sixth Amendment's constitutional protection." 516 U.S. 29, 49 (1995). We recently considered whether *Apprendi* and *Southern Union* had abrogated *Libretti*, and concluded that *Libretti* was still good law in the context of criminal forfeiture. *See United*

*States v. Phillips*, 704 F.3d 754, 769–70 (9th Cir. 2012). *Phillips*'s holding was clear: "there is no constitutional 'right to a jury verdict on forfeitability' in a criminal forfeiture proceeding." *Id.* at 769 (quoting *Libretti*, 516 U.S. at 49); *see also United States v. Christensen*, — F.3d —, 2015 WL 11120665, at \*44 (9th Cir. July 8, 2016) ("We have held that there is no constitutional right to have a jury decide forfeiture."). Every other circuit to consider whether *Libretti* has been abrogated agrees. *See id.*; *United States v. Simpson*, 741 F.3d 539, 559–60 (5th Cir. 2014); *United States v. Sigillito*, 759 F.3d 913, 935 (8th Cir. 2014); *United States v. Fruchter*, 411 F.3d 377, 380–82 (2d Cir. 2005). We have likewise concluded "that Federal Rule of Criminal Procedure 32.2 does not require a jury determination for forfeiture in the form of a personal money judgment, which is what the government obtained here." *Christensen*, — F.3d at —, 2015 WL 11120665, at \*44.

Although Lo attempts to distinguish these cases on the ground that his forfeiture order was not limited to the amounts alleged in the counts of conviction, we have already rejected this argument, because the forfeiture statute authorizes forfeiture of the proceeds from his fraudulent schemes. *Cf. Fruchter*, 411 F.3d at 384 (rejecting an *Apprendi* challenge to a similar forfeiture order for amounts associated with the overall racketeering scheme for which the defendant was convicted). Accordingly, we reject Lo's argument that the forfeiture order here violated *Apprendi*.

## IV

We conclude that Lo entered into an enforceable appeal waiver, that neither the restitution order nor the forfeiture

order is illegal, and that Lo has not raised any other exception that would permit us to consider his appeal.

**DISMISSED.**