FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

ASHOT MINASYAN,
*Defendant-Appellant.*

No. 19-50185

D.C. No.
2:14-cr-00329-ODW-3

OPINION

Appeal from the United States District Court
for the Central District of California
Otis D. Wright II, District Judge, Presiding

Argued and Submitted February 5, 2021
Pasadena, California

Filed July 9, 2021

Before: Ronald M. Gould, John B. Owens, and
Lawrence VanDyke, Circuit Judges.

Opinion by Judge Gould

**SUMMARY**[*]

**Criminal Law**

The panel affirmed the district court's judgment and sentence in a case in which the defendant pleaded guilty to conspiracy to commit health care fraud.

The defendant entered into a plea agreement in which he waived the right to appeal his conviction except on the ground that his plea was involuntary, and waived the right to appeal most aspects of his sentence if the district court determined that the offense level was no greater than 25.

The defendant contended that his plea was involuntary because the district court did not give him a full and fair opportunity to contest the loss amount at his sentencing hearing. He appeared to contend both that his inability to contest the loss amount violated due process, rendering the sentence illegal, and that his plea was involuntary because the district court's sentencing procedure was inconsistent with Fed. R. Crim. P. 32 and the Sentencing Guidelines. The panel wrote that neither contention is persuasive because the defendant had an adequate opportunity to contest the loss amount at the sentencing hearing. The panel disagreed with the defendant's contention that the cumulative result of the district court's refusal to withdraw his guilty plea, denial of motions for substitute counsel and continuances, and statements at sentencing demonstrate that the district court did not take seriously his challenge to the evidence on

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

intended loss. The panel wrote that the district court permissibly denied the defendant's motions, and therefore the denials do not support the voluntariness claim, that the defendant did not carry his burden to show that a "fair and just reason" existed for the withdrawal, and that the district court's comments at sentencing—that the defendant should not have pleaded guilty if he wanted to contest the amount of loss—may have been casual or imprudent, but did not render the guilty plea involuntary.

The defendant also contended that his plea was involuntary because—in light of *United States v. Miller*, 953 F.3d 1095 (9th Cir. 2020)—the plea agreement improperly stated the elements of the offense by stating that the requisite intent for the defendant's offense was "to deceive *or* cheat," instead of "to deceive *and* cheat." The panel wrote that even assuming *Miller* is controlling authority that would render any error here plain, the defendant is unable to show his substantial rights were affected, as he does not provide evidence that he would not have pleaded guilty if he had known the requisite intent was conjunctive, rather than disjunctive.

The defendant contended that the appellate waiver is unenforceable because the government breached the plea agreement by attempting to influence the court to give a higher sentence than the prosecutor's recommendation and by making statements at sentencing that were impermissibly inconsistent with its position at trial. The panel held that the government did not breach the plea agreement—explicitly or implicitly—and that the defendant's argument that a breach occurred cannot render his appeal waiver unenforceable.

**COUNSEL**

Kathryn Ann Young (argued), Deputy Federal Public Defender; Cuauhtemoc Ortega, Federal Public Defender; Office of the Federal Public Defender, Los Angeles, California; for Defendant-Appellant.

Kelley Brooke Hostetler (argued), Attorney, Appellate Section; Brian C. Rabbitt, Acting Assistant Attorney General; Emily Z. Culbertson, Robyn N. Pullio, and Claire Yan, Fraud Section, Criminal Division; Jeremy R. Sanders, Appellate Counsel, Fraud Section; United States Department of Justice, Washington, D.C.; for Plaintiff-Appellee.

**OPINION**

GOULD, Circuit Judge:

We consider the enforceability of an appeal waiver, and that subject requires us to touch upon the justifications for the plea-bargaining process and its significance in the current American system of criminal justice. Ashot Minasyan pleaded guilty to conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349, and entered into a plea agreement with the United States government. Under the plea agreement, Minasyan waived the right to appeal his conviction except on the ground that his plea was involuntary. Minasyan also waived the right to appeal most aspects of his sentence if the district court determined that the offense level was no greater than 25. The district court sentenced him to 78 months' imprisonment and three years' supervised release.

We hold that Minasyan's appeal waiver is enforceable. In so holding, we reject Minasyan's contentions that (1) the waiver was not knowing and voluntary, either by reason of the district court's sentencing procedure or its misstatement of the intent element during the plea colloquy; and (2) the government implicitly breached the plea agreement. Because Minasyan's appeal waiver is enforceable and the language of the waiver encompasses his right to appeal on the grounds raised, we affirm the district court's judgment and sentence.

# I

## A. Offense Conduct

In June 2015, the government filed its Second Superseding Indictment against Dr. Robert Glazer, Marina Merino, Angela Avetisyan, and Minasyan.[1] The government alleged that between approximately 2006 and May 2014, the co-defendants conspired to fraudulently bill Medicare for services not rendered and for "medically unnecessary" services.

Minasyan jointly owned Fifth Avenue Home Health ("Fifth Avenue"), a home health services agency incorporated in 2006, with Avetisyan. Avetisyan was the office manager and Minasyan was responsible for day-to-day operations. Fifth Avenue was located next to Dr. Glazer's clinic, which was housed at 5250 Santa Monica

---

[1] We addressed Glazer and Merino's cases in separate memorandum dispositions. *See United States v. Glazer*, No. 19-50335, 2021 WL 982269, at *1 (9th Cir. Mar. 16, 2021); *United States v. Merino*, 846 F. App'x 494 (9th Cir. 2021). Avetisyan's case was addressed by another panel. *See United States v. Avetisyan*, No. 19-50199, 2021 WL 2375923, at *1 (9th Cir. June 10, 2021).

Boulevard in Los Angeles, California.  Glazer's clinic accepted only Medicare-eligible patients.  Avetisyan and Minasyan paid "marketers" to recruit these patients and bring them to the clinic and Fifth Avenue.  The government alleged that once the patients were recruited, Glazer billed Medicare for medically unnecessary services and referred the individuals to Fifth Avenue and other providers for medically unnecessary home health services.

Between March 2010 and May 2014, Medicare paid Fifth Avenue $4.2 million for home health care services, most of which came from Glazer's referrals.  In 2015, a Medicare contractor reviewed a sample of Fifth Avenue's Medicare billings from between January 2011 and September 2014.  As a result of the review, Medicare denied all 240 claims for the 55 sampled beneficiaries.

## B.  Pre-Trial Motions and Plea Hearing

The 2015 indictment charged Minasyan with one count of health care fraud conspiracy, in violation of 18 U.S.C. §§ 1347 and 1349; seven counts of health care fraud, in violation of 18 U.S.C. §§ 1347 and 2; and one count of money laundering, in violation of 18 U.S.C. § 1956(h).

On August 15, 2018, Minasyan moved to replace his appointed counsel.  His counsel reported that Minasyan was uncooperative and angry when counsel tried to communicate the government's offer.  Minasyan contended that over several years his attorney had pushed him to cooperate against Glazer.  The district court denied the motion and explicitly told Minasyan that he was free to ignore counsel's advice.

Before the trial was set to begin, Minasyan agreed to plead guilty to conspiracy to commit health care fraud.  The

plea agreement set out the elements of the offense and Minasyan agreed that he understood that all of those elements must be met for him to be guilty of the offense. The parties agreed to a base offense level of 6 under the advisory Sentencing Guidelines, two additional levels for abuse of trust, *see* U.S.S.G. § 3B1.3, and the appropriate adjustment for acceptance of responsibility, *see* U.S.S.G. § 3E1.1.  The government agreed to dismiss the remaining counts for money laundering and health care fraud, but Minasyan agreed that the district court could still consider the conduct underlying those charges "in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed."

As to the loss calculation, the parties agreed only to a very broad range between $250,000 and $9,500,000, yielding an addition of between 12 and 18 offense levels pursuant to U.S.S.G. § 2B1.1.(b)(1), and potentially an additional two-level enhancement for fraud involving a federal health care program pursuant to U.S.S.G. § 2B1.1.(b)(7) (yielding either a 0 or +2 offense levels). Given the lack of agreement on the loss amount, the agreement was structured such that the government agreed to recommend a low-end sentence if the district court calculated Minasyan's offense level to be at least 17, while Minasyan's waivers and obligations took effect only if the district court calculated his offense level as 25 or below.  If Minasyan's term of imprisonment fell within or below the range corresponding to an offense level of 25, Minasyan agreed to waive most of his rights to appeal his sentence. Specifically, Minasyan agreed to waive: "the procedures and calculations used to determine and impose any portion of the sentence"; "the term of imprisonment imposed by the Court"; any fine within the statutory maximum; "to the

extent permitted by law, the constitutionality or legality" of any sentence under the statutory maximum; "the amount and terms of any restitution order, provided it requires payment of no more than $4,283,674.00"; and any term of probation or supervised release under the statutory maximum. Perhaps most importantly for our disposition of the case, he also waived the right to appeal his conviction on any basis other than that the plea was involuntary.

At the October 2019 plea hearing, Minasyan stated "No" when asked whether anyone made promises to him that were not set forth in the plea agreement. After the prosecution set out the elements of the offense, which mirrored those in the plea agreement, and the potential penalties, Minasyan stated that he had no questions. The district court then specifically asked Minasyan if he understood the portion of the plea agreement in which he agreed that he could appeal his conviction only on the basis that his plea was involuntary, and the portion in which he waived his right to appeal most aspects of his sentence if the district court calculated an offense level that was at or below 25. Minasyan said that he understood these points.

After the district court accepted Minasyan's guilty plea, the probation office recommended an 18-level increase for a loss between $3.5 and $9.5 million, and a corresponding sentencing range of 63 to 78 months. Consistent with its obligations under the plea agreement, the government recommended sentencing Minasyan to 63 months, the bottom of the range. Minasyan's sentencing memorandum, however, argued that the government had to prove the value of the loss by clear and convincing evidence and that the appropriate offense level was 17, reflecting between $250,000 and $550,000 of loss. He argued for a sentence at the low end of the resulting 27-to-33-month range.

Minasyan objected to the Presentence Investigation Report's ("PSR") assertions regarding loss amount and whether evidence existed that Fifth Avenue was legitimately providing home healthcare services to patients.

In March 2019, and again in April 2019, Minasyan made unopposed motions to continue the sentencing hearing to prepare expert reports that examined financial and patient records. The district court denied both motions. Eleven days before the scheduled sentencing hearing, Minasyan requested new counsel and moved to withdraw his guilty plea.[2] Minasyan's counsel renewed his request for a continuance if the district court denied the motion for substitute counsel.

The district court held a hearing on Minasyan's motion on May 9, 2019. Minasyan was assisted by an Armenian interpreter. His attorney reiterated that he and Minasyan were having significant difficulty communicating. The district court discussed the plea colloquy with Minasyan, and he alternately answered "Yes" and "No" when asked if he had "plead[ed] guilty because [he was] guilty." Minasyan said his attorney "pushed" him to plead guilty. Avetisyan's attorney intervened to state that Minasyan acknowledged "some amount of wrongdoing" but was objecting to the monetary loss attributed to him.

---

[2] Our law generally permits withdrawal of a plea before sentencing only for "fair and just reason[s]." Fed. R. Crim. P. 11(d)(2)(B). Also, in determining whether new counsel should be appointed, we consider: "(1) the adequacy of the district court's inquiry; (2) the extent of the conflict between the defendant and counsel; and (3) the timeliness of defendant's motion." *United States v. Reyes-Bosque*, 596 F.3d 1017, 1033 (9th Cir. 2010). We address whether the district court permissibly denied these motions in Part II.A.

The district court asked Minasyan whether he was concerned that he might be "held responsible for conduct of other people," and Minasyan replied, "Yes." Minasyan acknowledged that he might have done something wrong, but "the numbers are not correct." The district court told Minasyan that he could challenge the government's request about loss at the sentencing hearing. The district court also rejected Minasyan's claim for new counsel, explaining that Minasyan's current attorney was in the best position to prepare arguments about the loss amount before sentencing. The district court called the proceedings on Minasyan's motions "an exercise of gamesmanship that has wasted the Court's time."

### C.  Sentencing Hearing

At the sentencing hearing on June 10, 2019, Minasyan's counsel argued that the evidence was insufficient to support the government's proposed loss of $4.2 million as to Minasyan under the clear and convincing evidence standard. Minasyan's counsel also argued that the Medicare contractor who was tasked with analyzing Fifth Avenue claims was not neutral and that there was insufficient evidence to go from the contractor's relatively small sample to saying that everything at Fifth Avenue was fraudulent. The district court summarized Minasyan's argument as contending that Minasyan and Avetisyan had decided at some point to operate Fifth Avenue as a legitimate business, which is why only some of the claims submitted to Medicare were fraudulent.

The district court, however, rejected this argument based in part on evidence from Glazer's trial. The district court focused on the presence of a "light box," which can be used for tracing signatures, found through a search warrant near Avetisyan's desk at Fifth Avenue. Referring to this evidence

from Glazer's trial, the district court explained that "finding a box like that in a doctor's office is not out of place" because it could be used to read X-rays, but in this case the light box was instead found "at or near . . . Ms. Avetisyan's desk area." Because the evidence of fraud was still present when the search warrant was executed, the district court concluded that the "box was used to trace patient[s'] signatures all over the place and on everything." The district court also noted the presence of blank pre-signed forms at Fifth Avenue, determining that the scheme "was an ongoing problem—an ongoing fraud."

During its presentation, the government highlighted the Medicare contractor's audit, but the district court expressed concerns about the audit's validity, given that the auditor was paid based on the amount of money it saved Medicare. The government also pointed to Minasyan's plea agreement, in which he agreed that he paid kickbacks to patient recruiters and acknowledged that he knew Medicare does not pay for claims procured by kickbacks. Minasyan responded by stressing that, while there was no dispute about the factual basis of the plea—that Minasyan paid kickbacks to patient recruiters who brought patients to Glazer to get unnecessary prescriptions for home health care—the amount of loss "has always been in dispute."

The district court recognized that Minasyan wanted to be held accountable only for the loss for which he was responsible, but it noted that pleading to a conspiracy means that "what you are responsible for is going to be broadened somewhat." The district court stated:

> [I]t would seem to me that pleading guilty is just exactly the wrong thing to do, that what you need to be able to do is put on a case or at least be able to cross-examine the

government's case and contest this loss amount. But to plead guilty, you are pretty much admitting these allegations. [The sentencing hearing] is a strange time to try to then contest it after you have admitted to all of this wrongdoing.

The district court calculated Minasyan's advisory guidelines range as 63 to 78 months, based on an offense level of 25. The district court then determined that Minasyan should be sentenced at the high end of the range, despite the government's low-end recommendation. The district court ordered Minasyan to pay roughly $4.2 million in restitution. The district court adopted the PSR's analysis in full, at times reading from the PSR, and emphasized that "according to the government there is no known evidence that Fifth Avenue was legitimately providing home health care services," and further, there were no known mitigating factors.

After sentencing, at the request of defense counsel, the district court at first set an evidentiary hearing for August 16, 2019. But on August 5, 2019, the district court denied an evidentiary hearing on the ground that Minasyan's plea was not conditioned on such a hearing.

Minasyan timely appealed.

## II

The crux of this case concerns whether the appeal waiver was valid and enforceable. If so, then there is no need to address any other claims encompassed by the appeal waiver. Because we conclude that Minasyan's appeal waiver was

knowingly and voluntarily made and that it encompasses Minasyan's remaining claims,[3] we affirm the district court.

An appeal waiver in a plea agreement "is enforceable if the language of the waiver encompasses [the defendant's] right to appeal on the grounds raised, and if the waiver was knowingly and voluntarily made." *United States v. Watson*, 582 F.3d 974, 986 (9th Cir. 2009) (citation omitted). Minasyan contends that the appellate waiver is unenforceable for three reasons. First, Minasyan asserts that the plea was not knowing, intelligent, and voluntary because the district court impermissibly curtailed his right to present evidence on the loss amount. Second, he maintains that his plea was involuntary because he was misinformed about the elements constituting the crime for which he was charged. Third, he claims that the government implicitly breached the plea agreement, rendering the waiver unenforceable. None of Minasyan's claims have merit.

---

[3] Minasyan waived "any right to appeal [his] conviction," except for a claim that his plea was involuntary. This waiver encompasses Minasyan's claims that the district court erred in refusing to allow him to withdraw his plea or to substitute counsel. *See United States v. Odachyan*, 749 F.3d 798, 804 (9th Cir. 2014) (dismissing challenges to sentence that were not specified as exceptions to an appeal waiver). Minasyan also waived the right to appeal "the procedures and calculations used to determine and impose any portion of the sentence" and "the term of imprisonment imposed by the Court." This portion of the waiver encompasses his claims related to sentencing, including his claims that his sentence is unlawful, his sentence is substantively unreasonable, and his claims related to the district court's loss calculation. *E.g.*, *United States v. Kelly*, 874 F.3d 1037, 1051 (9th Cir. 2017) (upholding appeal waiver that encompassed the sentencing issue raised by defendant). Minasyan does not appear to dispute that the waiver encompasses his remaining claims.

Because Minasyan did not make these arguments before the district court, we review them for plain error. *United States v. Minore*, 292 F.3d 1109, 1117 (9th Cir. 2002). "Relief for plain error is available if there has been (1) error; (2) that was plain; (3) that affected substantial rights; and (4) that seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Cannel*, 517 F.3d 1172, 1176 (9th Cir. 2008).

## A

Minasyan contends that his plea was involuntary because the district court did not give him a full and fair opportunity to contest the loss amount at his sentencing hearing. Minasyan appears to contend both that his inability to contest the loss amount violated due process, rendering the sentence illegal, and that his plea was involuntary because the district court's sentencing procedure was inconsistent with Rule 32 of the Federal Rules of Criminal Procedure and the Sentencing Guidelines.[4]

Neither contention is persuasive because Minasyan had an adequate opportunity to contest the loss amount at the sentencing hearing. It is true that the "sentencing process . . . must satisfy the requirements of the Due Process Clause." *Gardner v. Florida*, 430 U.S. 349, 358 (1977). But

---

[4] The government urges that Minasyan's argument about a full and fair opportunity to contest the loss amount is an effort to "avoid his appeal waiver to raise his true complaint that the district court erred in denying him an evidentiary hearing at sentencing." Because this is so, the government argues that this claim is either precluded by the appeal waiver or should be reviewed for abuse of discretion. While this assessment is plausible, we conclude that Minasyan made arguments in the briefs that were specific enough to preserve a claim based on the voluntariness of his plea.

the record reflects that Minasyan was able to present evidence before and at the sentencing hearing to combat the government's proposed loss amount. It also shows that the hearing itself conformed to the federal rules and guidelines.

Notwithstanding these opportunities, Minasyan contends that the cumulative result of the district court's refusal to withdraw his guilty plea, denial of his motions for substitute counsel and continuances, and statements at sentencing demonstrate that the district court did not take seriously Minasyan's challenge to the evidence on intended loss. We disagree.

First, we conclude that the district court permissibly denied Minasyan's motions, and therefore the denials do not support his voluntariness claim. A defendant may withdraw his guilty plea before sentencing only if he "can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). Although this standard is liberal, it must be consistent with "Rule 11's purpose of ensuring some finality at the time pleas are accepted." *United States v. Ensminger*, 567 F.3d 587, 593 (9th Cir. 2009) (citation omitted). We have held that "[o]nce the plea is accepted, permitting withdrawal is, as it ought to be, the exception, not an automatic right." *Id.* Importantly, the burden is on the defendant to show a permissible reason to withdraw the guilty plea, which includes reasons like "inadequate Rule 11 plea colloquies, newly discovered evidence, intervening circumstances, or any other reason for withdrawing the plea that did not exist when the defendant entered his plea." *Id.* at 590–91 (citations omitted). Here, Minasyan understood at the time of his plea that he and the government disagreed on the amount of loss. Before his plea, he also acknowledged that the district court retained discretion to sentence him up to the statutory maximum.

Minasyan did not carry his burden to show that a "fair and just reason" existed for withdrawing his plea. *See United States v. Briggs*, 623 F.3d 724, 728, 729 (9th Cir. 2010) (upholding denial of motion to withdraw plea where the defendant "only wanted to change his plea once he was face-to-face with the full consequences of his conduct"). Regarding the motion for new counsel, the district court adequately considered both the alleged communication difficulties between Minasyan and his attorney and whether continuances to the sentencing hearing were justified. *See United States v. Mendez-Sanchez*, 563 F.3d 935, 942–43 (9th Cir. 2009) (concluding that the district court did not abuse its discretion where the inquiry into the alleged conflict was adequate).

Second, while the district court's comments at sentencing—namely, that Minasyan should not have pleaded guilty if he wanted to contest the amount of loss—may have been casual or imprudent, the statements did not render his guilty plea involuntary.

Minasyan was well aware when he pleaded guilty that he and the government sharply disagreed on the loss calculation and that he had not been promised a full evidentiary hearing on the loss. Under the plea agreement, which Minasyan said he understood, he was entitled to file objections to the PSR and to comment on loss at the sentencing hearing. Consistent with these rights, Minasyan did file a sentencing memorandum before the hearing contesting the government's proposed loss calculation. Minasyan also had an opportunity at the hearing to raise any legal or factual matters that would bear on his sentence. His counsel argued the company that analyzed billing samples from Fifth Avenue was not neutral, and that it was a "leap of faith" to extrapolate from the sample reviewed that all claims

submitted by Fifth Avenue were fraudulent. Minasyan's counsel incorporated by reference the arguments contained in the sentencing memorandum and acknowledged that the district court had also heard evidence of the fraud scheme that was presented at Glazer's trial.

We conclude that Minasyan had a full and fair opportunity to be heard. Contrary to Minasyan's contention, the sentencing hearing also conformed to Federal Rule of Criminal Procedure 32. Rule 32(i)(1)(C) provides that the district court "must allow the parties' attorneys to comment on the probation officer's determinations and other matters relating to an appropriate sentence." Fed. R. Crim. P. 32(i)(1)(C). But Rule 32(i)(2) also states that the district court "*may* permit the parties to introduce evidence" on objections to the PSR. *Id.* at 32(i)(2) (emphasis added). While the district court was required to allow Minasyan to challenge the probation office's findings on intended loss, the district court had discretion to determine whether presenting evidence to support the challenge would be helpful or necessary. *See United States v. Salcido*, 506 F.3d 729, 735 (9th Cir. 2007) (per curiam) (finding no error under Rule 32 where the defendant "was permitted to file written objections to the presentence report and was given the opportunity to make additional arguments at the sentencing hearing").

The district court gave Minasyan a fair opportunity to contest the government's loss calculation even if it was not the full evidentiary hearing that Minasyan wanted—but to which he was not entitled. We conclude that Minasyan's plea was not involuntary due to the district court's sentencing procedure and comments, nor did Minasyan's sentence, in the context of Minasyan's opportunities to be heard, violate his due process rights.

**B**

Minasyan next contends that his plea was involuntary because—in light of our recent decision in *United States v. Miller*, 953 F.3d 1095 (9th Cir. 2020)—the plea agreement improperly stated the elements of the offense. Specifically, the agreement stated that the requisite intent for Minasyan's offense was "to deceive *or* cheat," instead of "to deceive *and* cheat." In *Miller*, we held that the wire fraud statute requires "not mere deception, but a scheme or artifice to defraud or obtain money or property, i.e., in every day parlance, to cheat someone out of something valuable." *Id.* at 1101. The government contends that any error could not have been plain because *Miller* concerned wire fraud under § 1343, rather than health care fraud under § 1349. *United States v. Gnirke*, 775 F.3d 1155, 1164 (9th Cir. 2015) (stating that plain error generally requires "controlling authority on point" (citation omitted)).

Even assuming that *Miller* is controlling authority that would render any error here plain, Minasyan is unable to show his substantial rights were affected. *See United States v. Roblero-Solis*, 588 F.3d 692, 701 (9th Cir. 2009) (a showing that substantial rights have been affected requires "a reasonable probability that, but for the error, he would not have entered the plea" (citation omitted)). Minasyan does not provide evidence that he would not have pleaded guilty if he had known the requisite intent was conjunctive, rather than disjunctive. Indeed, his argument before and after the guilty plea was that Fifth Avenue is not *entirely* fraudulent, consistent with someone who deceived *and* cheated, albeit to a lesser extent. He can make no argument that his scheme was "mere deception" because it was a scheme "to cheat someone"—in this case, Medicare—"out of" money, which is unquestionably "something valuable." *See Miller*,

953 F.3d at 1101. Accordingly, the improperly stated elements in the plea agreement did not render Minasyan's plea involuntary.

## C

Finally, Minasyan contends that the appellate waiver is unenforceable because the government breached the plea agreement. Even though the government adhered to the explicit terms of the plea agreement by recommending a low-end sentence, Minasyan contends nonetheless that the prosecutor implicitly breached the plea agreement by "attempt[ing] . . . to influence the court to give a higher sentence than the prosecutor's recommendation." *United States v. Johnson*, 187 F.3d 1129, 1135 (9th Cir. 1999); *see also United States v. Heredia*, 768 F.3d 1220, 1231 (9th Cir. 2014) (stating that the government "may not superficially abide by its promise to recommend a particular sentence while also making statements that serve no practical purpose but to advocate for a harsher one").

To support this claim of implicit breach, Minasyan asserts that the government included in its sentencing memorandum "negative information already set forth in the PSR," details related to the dismissed money laundering offense, and "prejudicial details regarding offenses with which Minasyan was not involved." He also contends that the government made self-serving and contradictory use of the "light box" evidence at the sentencing hearing.[5] At the hearing, the government agreed with the district court that the light box was a "hallmark of fraud," even though the

---

[5] To the extent Minasyan also argues the district court violated due process by relying upon materially untrue information relating to the "light box," we disagree.

government had presented a witness in Glazer's trial, ten days prior, who testified that the light box displayed no signs of tracing.

We conclude that the government did not implicitly breach the plea agreement.  To begin with, the government did not waive its right to argue for a higher loss calculation than Minasyan.  The government's discussion of the overall conspiracy and Minasyan's role in it could properly assist the district court in its loss calculation.  Details about the dismissed money laundering offense were also validly included in its sentencing position because the plea agreement had expressly stipulated that the district court could rely on evidence concerning dismissed charges "in determining the applicable Sentencing Guidelines range." Here, information about the structured withdrawals that were relevant to the dismissed charge were also relevant to support the conclusion that Minasyan was not running a legitimate home health care service.

The government's endorsement of the district court's statement that the light box was a "hallmark of fraud" did not implicitly breach the agreement.  Based on the evidence presented at Glazer's trial about the light box found at Fifth Avenue, the district court expressed skepticism about the defense position that aspects of Fifth Avenue's care were legitimate.  The district court acknowledged that finding a light box in a doctor's office may not be indicative of fraud on its own, because a light box can be used to read X-rays. But in this case the box was found near Avetisyan's desk, and it was still there when the search warrant was executed. Coupled with the many blank prescription pads that were already signed at the same location, the district court concluded that Minasyan was participating in "an ongoing fraud."

When the government was then given a chance to comment, it agreed with the district court's observation that the light box and the blank signed prescription pads were "hallmarks of fraud." The government had reserved the right to contest the loss amount at the sentencing hearing, so it was permissible for the government to support the district court's conclusion that Minasyan and Avetisyan had not decided at some point to begin operating a legitimate business. *Cf. United States v. Whitney*, 673 F.3d 965, 971 (9th Cir. 2012) (holding that the government breached the plea agreement where the prosecutor "introduce[d] information that serve[d] no purpose but to influence the court to give a higher sentence" (internal quotation marks and citation omitted)).

Despite this alternative purpose, Minasyan contends that the government's statements still breached the plea agreement because they were impermissibly inconsistent with its position at trial—that Glazer knew about the fraud and his signatures had not been traced without his knowledge using the light box. We disagree. First, the government's statement was not necessarily inconsistent with its position at trial. At Minasyan's sentencing hearing, the government acknowledged only that a light box is a hallmark of fraud; it did not state that the light box in this case was used to trace Glazer's or anyone else's signature.

But even if the government's light box statement was inconsistent with its theory of the light box at Glazer's trial, any error would not be plain. To be plain, the error must be "clear or obvious, rather than subject to reasonable dispute." *Puckett v. United States*, 556 U.S. 129, 135 (2009). Furthermore, Minasyan could not show that reliance on the light box evidence affected his substantial rights. *Cannel*, 517 F.3d at 1176. The government's discussion of the light box was brief and was not a focal point of its presentation to

the district court.  The government also coupled its statement about "hallmarks of fraud" with an emphasis on the signed blank prescription pads, which are undeniably hallmarks of fraud in this context.

Because we hold that the government did not breach the plea agreement—explicitly or implicitly—Minasyan's argument that a breach occurred cannot render his appeal waiver unenforceable.

## III

We hold that Minasyan's plea was voluntary and his appeal waiver is fully enforceable.  *See United States v. Lo*, 839 F.3d 777, 784 (9th Cir. 2016).  Under the agreement, Minasyan waived the right to appeal his conviction except on the ground that his plea was involuntary.  Minasyan also waived the right to appeal most aspects of his sentence if the district court determined that the offense level was no greater than 25, which the district court did.  The plea bargain reached by the government and Minasyan was a finely tuned agreement between a criminal defendant and the prosecuting government party.  Each gave up some rights and gained some benefits in the compromise that avoided the trial and appeal time for the parties and eliminated what would have been unavoidable uncertainties for the government.  But at the same time, the compromise plea bargain limited charges and risks to Minasyan of incurring a larger penalty if he went to trial and lost.[6]

---

[6] The Supreme Court has described some of the benefits of fair plea bargaining in this way:

> The disposition of criminal charges by agreement
> between the prosecutor and the accused, sometimes

Because a valid appeal waiver governs the remainder of Minasyan's claims on appeal, and he has not raised any exception that would permit us to consider them, we do not address those claims.  *See Lo*, 839 F.3d at 795.

**AFFIRMED.**

loosely called 'plea bargaining,' is an essential component of the administration of justice.  Properly administered, it is to be encouraged.  If every criminal charge were subjected to a full-scale trial, the States and the Federal Government would need to multiply by many times the number of judges and court facilities.

Disposition of charges after plea discussions is not only an essential part of the process but a highly desirable part for many reasons.  It leads to prompt and largely final disposition of most criminal cases; it avoids much of the corrosive impact of enforced idleness during pre-trial confinement for those who are denied release pending trial; it protects the public from those accused persons who are prone to continue criminal conduct even while on pretrial release; and, by shortening the time between charge and disposition, it enhances whatever may be the rehabilitative prospects of the guilty when they are ultimately imprisoned.

*Santobello v. New York*, 404 U.S. 257, 260–61 (1971); *see also Blackledge v. Allison*, 431 U.S. 63, 71 (1977) ("Properly administered, [plea bargains] can benefit all concerned.").